[714 NYS2d 73]

In the Matter of ELOISE M. NURSE, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 19, 2000

**APPEARANCES OF COUNSEL**

*Jeremy S. Garber* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

*Earle C. Roberts* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Eloise M. Nurse was admitted to the practice of law in the State of New York by the First Judicial Department on January 13, 1997.

The Departmental Disciplinary Committee, by notice and statement of charges dated June 25, 1999, charged respondent with violating three sections of the Code of Professional Responsibility. Charge One asserted that respondent's deliberate failure to report her previous legal and business employment with a sports apparel company (the Company) on her application for admission to the Bar was a violation of Code of Professional Responsibility DR 1-101 (a) (22 NYCRR 1200.2), which subjects a lawyer to discipline when he or she has made a materially false statement in, or has deliberately failed to disclose a material fact in connection with, his or her application for admission. Charge Two alleged that the aforesaid failure to disclose constituted conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of DR 1-102 (a) (4) (22 NYCRR 1200.3). Charge Three asserted that respondent engaged in conduct adversely reflecting on her fitness to practice law, in violation of DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3), and alleged that she placed harassing and threatening telephone messages on a former boyfriend/ employer's answering machine, which resulted in her plea of guilty to one count of disorderly conduct, a violation under Penal Law § 240.20 (7). Respondent answered the petition and admitted substantially all of the charges, although she denied that her conduct regarding the admission application involved dishonesty, fraud, deceit or misrepresentation (DR 1-102 [a] [4] [22 NYCRR 1200.3]).

A Referee was subsequently appointed by this Court and, by a Report and Recommendation dated November 30, 1999, the Referee made the following findings of fact. Respondent was notified on April 28, 1993, that she passed the New York State Bar Examination, although she was not admitted to the Bar until January 13, 1997. In or about the Spring of 1994, respondent became romantically involved in a personal relationship with the president of the Company (the employer), and in August 1994, respondent was hired by the Company and acted in both a business and legal capacity, although not yet admitted to the Bar. In the course of her employment, respondent

negotiated a number of contracts and business arrangements in which she held herself out as "Eloise M. Nurse, Esq.," and in the Company's Business Plan, respondent was referred to as "in house counsel" and introduced herself as "in house counsel" at a July 1995 advisory board meeting of the Company. In July 1995, after a bitter break up with her employer, respondent was discharged from the Company and received $10,000 in termination pay which was denoted as "legal fees" on the memo portion of the Company's check.

Respondent applied for admission to the Bar approximately 15 months later, but failed to list her employment with the Company in response to either questions (9) or (10) which inquired, respectively, whether she had been employed in a business or legal capacity, and which required her to delineate such employment in chronological order. Respondent also provided a negative answer to question (12) of the application, which asked "Are you now, or have you ever been engaged on your own account or with others in any occupation, business or profession?" In response to question (11), respondent indicated that she had never been discharged or requested to resign from a position. Finally, respondent replied in the negative to question (13) (d) on the application, which inquired: "Except for activities comprising part of a law school clinical program or otherwise permitted by law (see Judiciary Law §§ 478, 484) have you ever tried any action or proceeding, argued any motion, drawn legal papers, other than under the supervision of an attorney, given legal advice or held yourself out as an attorney or counselor-at-law in this State?"

On March 4, 1997, two months after her admission, respondent left a series of telephone messages on her employer's answering machine seeking compensation for her claimed assistance in securing a licensing agreement between the National Football League and the Company. Respondent threatened her employer that if she was not paid, she would inform his wife of their alleged sexual relationship; tell the wife's employer, a school district, that the wife was a drug addict; and that her employer would end up dead like her last boyfriend. Respondent was subsequently arrested by the Nassau County police and was charged with attempted grand larceny in the second degree (Penal Law §§ 110.00, 155.40) for attempting to obtain property by extortion, and aggravated harassment in the second degree (Penal Law § 240.30 [1]). Respondent eventually pleaded guilty to one count of disorderly conduct (Penal Law § 240.20 [7]).

Respondent, by way of mitigation, presented the testimony of Alfred Thomson, the executive officer of Food First, Inc., a nonprofit agency which provides and arranges for housing to the homeless, the disabled, AIDS sufferers, and victims of domestic violence and which is respondent's current employer. Mr. Thomson averred that respondent was recently promoted to the position of director of legal affairs and is indispensable to the protection of the legal rights of the underserved. Michelle Franklin Richardson, Esq., a fellow law school classmate of respondent, who is presently a staff counsel to the administration for Children's Services in New York City, testified that respondent's conduct was aberrational; that she believed it would be a travesty to prevent respondent from practicing law given her present position, and that the charges and underlying conduct has taken an emotional toll on respondent and her family.

Respondent, testifying on her own behalf, substantially admitted the charges against her and, according to the Referee, "expressed contrition, understood the serious nature of the charges against her and accepted responsibility for acting inappropriately." The Referee thereafter sustained all three charges and recommended a sanction of a two-month suspension.

The Referee's findings of fact were confirmed by a Hearing Panel in a determination dated January 18, 2000, but the Panel modified the recommended sanction to public censure. In doing so, the Panel addressed a variety of factors in reaching its conclusion, including the nature and seriousness of the misconduct in both filing a Bar application filled with inaccuracies and engaging in harassing personal conduct. The Panel noted, however, that there was no need in this case to impose a sanction designed to protect the public and concluded that it was unlikely that respondent would engage in similar conduct in the future.

The Committee, by petition dated March 29, 2000, seeks an order sanctioning respondent as this Court deems just. Respondent, on the other hand, requests that this Court confirm the Hearing Panel's recommendation of public censure.

In the matter at hand, respondent provided legal and business services to a company, held herself out as an attorney on numerous occasions prior to her admission to the Bar, and was eventually terminated by her employer, all of which she deliberately failed to disclose pursuant to numerous questions on her application for admission to the Bar. Respondent then

endeavored to threaten her alleged former lover/employer not only with physical menace, but also threatened to destroy his marriage, his wife's career, his professional dealings with the National Football League and, finally, his life. While respondent purportedly expressed remorse, provided character letters indicating her behavior was aberrational, and currently works for an organization dedicated to the public good, we find it noteworthy that respondent, under cross-examination, admitted that the nonprofit organization is also involved in for-profit interests, including home sale and construction, and when questioned how her time was divided because her work is being considered in mitigation, she replied that although "it's hard to say," she spends approximately 50% of her time handling matters arising out of the for-profit end of the business. We, therefore, find a sanction of a three-month suspension to be appropriate in light of the circumstances herein (*see generally, Matter of McDaniel*, 263 AD2d 209; *Matter of Rosenblatt*, 253 AD2d 106).

Accordingly, the Committee's motion should be granted to the extent of suspending respondent from the practice of law for three months.

SULLIVAN, P. J., ROSENBERGER, NARDELLI, ELLERIN and WALLACH, JJ., concur.

Petition granted to the extent of suspending respondent from the practice of law in the State of New York for a period of three months, effective November 20, 2000.