[826 NYS2d 200]

In the Matter of GLENN A. KICZALES (Admitted as GLENN ANDREW KICZALES), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 28, 2006

APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Jun Hwa Lee* of counsel), for petitioner.

*Michael S. Ross* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Glenn Andrew Kiczales was admitted to the practice of law in New York by the Second Judicial Department on March 13, 1996. At all times relevant herein, respondent maintained an office for the practice of law within the First Judicial Department.

By a notice and statement of charges, respondent was charged with violating several disciplinary rules in connection with his representation of a client in a pending litigation, and his attempt to secretly obtain money from a represented adverse party (without permission or authority) for his own financial benefit. In his answer, respondent admitted four of the seven violations, and denied the remaining three.

Subsequently, the parties entered into a stipulation by which respondent admitted to Charges One, Two, Five (as amended), Six and Seven. At a hearing conducted by a Referee, respondent testified on his own behalf and called four character witnesses. The facts are undisputed. After his 1996 admission, respondent worked for a few years for single practitioners involving mostly landlord-tenant matters. In April 2000, respondent began working in the landlord-tenant litigation department of a law firm.

About two years later, in July 2002, respondent was assigned to work on a litigation on behalf of Stahl Associates to recover an apartment from a tenant and Mr. Rajiv Gosain, an alleged improper sublessee. On January 15, 2004, at the conclusion of Gosain's deposition, respondent received permission from Gosain's counsel to speak alone with Gosain regarding the amount of back rent he owed Stahl Associates. Respondent had calculated that Gosain owed $2,000 less than anticipated in back rent. In appreciation, Gosain offered to pay the $2,000 to

respondent. Respondent initially refused, but acceded to it by telephone the next day. Respondent later testified that he decided to accept the money because his wife was angry with him for having lost $1,500 on a recent gambling trip to Atlantic City. At a subsequent meeting at Grand Central Station, Gosain withdrew the offer, claiming that further calculations had showed no savings in back rent.

Shortly after that meeting, Gosain e-mailed respondent and offered a large sum of money, separate from the $2,000, in exchange for respondent's help in obtaining a favorable settlement in the underlying case. Respondent initially declined. In February 2004, Gosain telephoned respondent and reiterated the offer, specifying that in exchange for a satisfactory settlement and a rent stabilized lease he would pay respondent $20,000. Respondent testified that he told Gosain that he was not willing or able to obtain a favorable settlement for him. He explained that he was only a junior attorney, that his client was a sophisticated landlord and, even if he was willing to do so, he could not possibly exert any influence over the decision making.

In that same conversation, Gosain offered respondent $2,000 to provide information regarding the impact that certain audio-tape evidence he had might have on the litigation, indicating that the money would have to be returned if the case went to trial. Respondent, however, wished the payment to be nonre-fundable and repeatedly pressed Gosain in subsequent e-mails on this "critical" issue.

E-mails between respondent and Gosain entered into evidence before the Referee show respondent's repeated solicitations of the $2,000 payment and repeated assertions of his willingness to act secretly on Gosain's behalf.[1] Respondent also advised Gosain to never tell his attorney or anyone else that they were in contact with each other. Respondent stopped communicating with Gosain in late February or early March 2004, when he became frustrated after receiving no replies to his e-mails concerning the promised $2,000 as payment for information about the impact of certain audiotapes.

In mid-March 2004, following a court appearance on the Stahl Associates matter, Gosain's counsel, Mr. Zalewski, informed respondent that he had learned of improper ex parte communications between respondent and Gosain.

---

1. Some e-mails could not be produced because of the firm's limited computer storage space, but respondent discussed some of those e-mails to the best of his recollection.

Over a month later, on April 27, 2004 (two days before trial in the underlying litigation), Zalewski faxed copies of e-mails between Gosain and respondent to respondent's superior at the law firm. Respondent testified that, independently (and coincidently) he voluntarily confessed his misconduct to the firm on that very same day. The next day, the firm terminated respondent. Subsequently, the firm agreed to withdraw as Stahl Associates' counsel, causing Stahl to incur additional time and costs to retain new counsel and precluded Stahl from having its initial choice of counsel.

Thereafter, respondent made some effort to obtain work as an attorney, without success. He testified that he voluntarily suspended himself from the practice of law on or about April 28, 2004 (the day he was terminated), and is now doing brokerage work.

The Referee concluded respondent was guilty of six of the seven charges: (1) respondent had ex parte communications with Gosain, an adverse party in a landlord-tenant litigation without permission or consent of his attorney in violation of Code of Professional Responsibility DR 7-104 (a) (1) (22 NYCRR 1200.35); (2) he entered into an agreement to accept $2,000 from Gosain, without Stahl Associates' consent, in exchange for information in connection with audiotapes in violation of DR 1-102 (a) (4) (22 NYCRR 1200.3 [conduct involving dishonesty, fraud, deceit or misrepresentation]); (3) respondent entered into an agreement to accept $20,000 from Gosain, without his client's consent, in exchange for a favorable settlement of the litigation in violation of DR 1-102 (a) (4); (4) respondent provided information and assistance to Gosain, without Stahl Associates' consent and to its prejudice in violation of DR 7-101 (a) (3) (22 NYCRR 1200.32); (5) respondent continued to represent Stahl Associates when his professional judgment was affected by his own financial interests in entering into an agreement to accept monies from Gosain in violation of DR 5-101 (a) (22 NYCRR 1200.20); and (6) respondent engaged in conduct that adversely reflected on his fitness as a lawyer in violation of DR 1-102 (a) (7).[2]

In mitigation, respondent presented several character witnesses, who were personal friends, all attesting to his reputation for truthfulness and integrity, and his remorse over his

2. Charge Four, which was not sustained, alleged respondent had taken e-mails from his superior's desk and then denied taking them in violation of DR 1-102 (a) (4).

conduct. A letter from respondent's father was also introduced, indicating respondent's commitment to the highest standards of the legal community and to the well-being of his family. Respondent acknowledged that his willingness to accept $2,000 in exchange for information about audiotapes was improper, unethical and inexcusable, even though no money ever changed hands. The Committee suggested a three-year suspension and respondent recommended a two-year suspension retroactive to April 28, 2004, the date on which he claimed he had voluntarily ceased practicing law.

The Referee sustained all charges except Charge Four, recommended respondent be suspended for 2½ years (30 months), and denied respondent's request that the suspension be applied retroactively. In denying this request, the Referee noted that respondent's "self-suspension" "was based solely on his recognition that no law firm would hire him under the circumstances knowing the reasons for his termination from his firm, and the likelihood of his having to face disciplinary charges." Thus, the Referee considered his voluntary withdrawal in mitigation only (*see Matter of Zichettello*, 12 AD3d 128 [2004]).

A Hearing Panel heard oral argument and by a report, the Panel concurred in the Referee's recommendation of a prospective 30-month suspension, calling respondent's conduct "a serious breach of the most fundamental duty of loyalty that governs the practice of law."

The Committee now seeks an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) confirming the findings of fact and conclusions of law of the Referee and the determination of the Hearing Panel, and suspending respondent for no less than 2½ years.

We confirm the Hearing Panel's findings of fact and conclusions of law. We agree with its assessment that respondent's conduct was "a serious breach of the most fundamental duty of loyalty that governs the practice of law" and find that such misconduct "strikes at the heart of the attorney-client relationship, that is, the trust that clients place in their attorneys to pursue their legal interests. The misconduct encompasses precisely the fear clients have that their attorneys will be 'bought off' by opposing counsel, or that their attorneys will use the clients' case to surreptitiously profit from the representations" (*In re Hager*, 812 A2d 904, 921 [DC 2002]). While respondent never actually took any money from Gosain, he entered into two agreements with an adverse party who was

represented, to receive money for his own personal benefit, potentially harming and prejudicing his client's interest. As the Referee noted the totality of respondent's betrayal of his client's interests could warrant disbarment.

On the other hand, there are mitigating factors, including respondent's lack of a disciplinary record since his 1996 admission to the bar, his admission of guilt and expressions of remorse, and his cooperation with the Committee. As a result, we concur in the view that suspension, as opposed to disbarment, is the appropriate sanction. However, in our opinion, this conduct warrants a more lengthy suspension than that recommended.

The sanctions imposed in cases involving dishonest conduct for financial or personal gain range from disbarment (*see e.g. Matter of Gen*, 29 AD3d 230 [2006]; *Matter of Gadye*, 283 AD2d 1 [2001]; *Matter of McDaniel*, 263 AD2d 209 [1999]) to suspension (*see e.g. Matter of David*, 3 AD3d 174 [2004] [15-month suspension for participating in a scheme involving securities fraud, bribery and money laundering, for which he received a $10,000 payment, significant mitigation]; *Matter of Fields*, 280 AD2d 104 [2001] [nine-month suspension for funneling secret bribes to insurance company adjusters to expedite clients' cases]; *Matter of Cantor*, 252 AD2d 269 [1999] [attorney convicted of bribery and conspiracy to commit bribery involving a public official, on three occasions, was suspended for three years where significant mitigation included excellent reputation, lack of disciplinary history, his minor role in crimes, his advanced age and poor health, cooperation and remorse]; *Matter of Yamada*, 197 AD2d 235 [1994], *lv denied* 83 NY2d 761 [1994] [attorney who assisted client in various illegal and fraudulent schemes, and engaged in conflict of interest, suspended for three years where no remorse but unblemished 30-year career]). After careful consideration, we conclude that a suspension of five years would be appropriate under the present circumstances.

Accordingly, the Committee's petition should be granted to the extent of confirming the Hearing Panel's findings of fact and conclusions of law, and respondent should be suspended from the practice of law for a period of five years.

BUCKLEY, P.J., MAZZARELLI, SAXE, WILLIAMS and McGUIRE, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of five years, effective the date hereof, and until further order of this Court.