[851 NYS2d 148]

In the Matter of MICHAEL CALIGUIRI, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 31, 2008

## APPEARANCES OF COUNSEL

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Angela Christmas* of counsel), for petitioner.

*David H. Gendelman* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Michael Caliguiri was admitted to the practice of law in the State of New York by the Second Judicial Department on April 30, 1980. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the Second Judicial Department.

In October 2006, respondent was served with a notice and statement of six charges alleging he engaged in professional misconduct by reviewing and "using" confidential documents belonging to a client. Respondent's wife improperly obtained these documents while she was an employee of the client—an insurance defense company—in order to assist respondent in the prosecution of a medical malpractice case his firm was not assigned to defend.

The Referee held a hearing, during which respondent and his wife testified, as did two character witnesses. The Committee recommended respondent be suspended for one year, and respondent asked for a private reprimand.

The parties entered into a prehearing stipulation in which respondent admitted four of the six charges. In particular, he admitted he engaged in conduct that was prejudicial to the administration of justice in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [charge 1]); engaged in conduct that adversely reflected on his fitness to practice law in violation of DR 1-102 (a) (7) (charge 2); accepted employment when the exercise of professional judgment on behalf of a client might have been affected by his own personal interest in giving advice in violation of DR 5-101 (a) (22 NYCRR 1200.20 [charge 5]); and accepted proffered employment when his exercise of independent professional judgment on behalf of a client would likely be adversely affected by the acceptance of the proffered employment or would likely involve respondent representing differing interests in violation of DR 5-105 (a) (22 NYCRR 1200.24 [charge 6]).

Respondent contested charges three and four, both of which prohibited the use of a confidence or a secret of a client, to the disadvantage of the client (DR 4-101 [b] [2] [22 NYCRR 1200.19]), and for the advantage of respondent or a third person (DR 4-101 [b] [3]). Respondent argued that, while he admittedly read the confidential documents, he did not "use" them within the meaning of the disciplinary rule in that he never gave copies of the documents or information contained therein to a third party. Moreover, since the opinion he gave about the way the case would proceed was the same before he read the documents as it was after he reviewed the material, he did not formulate his advice based on something he learned from the documents. The Committee, however, argued that a reasonable inference could be drawn that respondent "used" the documents since he read and reviewed them at a time when he was providing advice to another attorney in a matter adverse to his own law firm's client.

The facts adduced at the hearing are largely undisputed. From 1984 until 2003 respondent was employed by Garbarini & Scher, a law firm primarily responsible for representing defendants in medical malpractice actions. In 1999, respondent became the firm's managing partner. Medical Liability Mutual Insurance Company (MLMIC), an insurer of medical doctors, was one of the firm's major clients.

Because of respondent's expertise in the field of medical malpractice, he was requested by an attorney neighbor to answer questions in this area from an inexperienced attorney, the neighbor's law partner Richard Farley. Respondent agreed to give Farley advice on a malpractice action in which Farley represented the plaintiff, but respondent refused to accept any money. Respondent explained that on a prior occasion, his neighbor had done some initial investigation and legal research at respondent's request on behalf of someone with whom respondent conducted business and with whom respondent had become friendly. The neighbor never charged respondent's friend for these services.

The initial advice respondent gave to Farley on this malpractice matter predated the commencement of any malpractice action. In addition, respondent testified that during his discussions with Farley, "it didn't dawn on [him] that [the carrier] might be [MLMIC]." Moreover, although MLMIC was the carrier, respondent's firm was not retained to defend that action.

Respondent's wife testified that she knew her husband was providing advice to Farley and that the defendant-doctor was

insured by her employer MLMIC. She also testified that, without any suggestion from her husband, she secretly copied the confidential file on this matter and gave it to her husband to be "helpful." Respondent told her she should not have copied the file, but, nevertheless, he looked at the papers out of curiosity, remarking that he really did not need the MLMIC file because he knew exactly how the case would be defended, based upon his extensive medical malpractice experience. Respondent himself testified that he looked at the documents out of curiosity and to confirm whether his opinion about the action was correct, namely, that the case would not settle because there was a viable defense.

The underlying malpractice action was eventually settled with full disclosure of respondent's relationship with Farley. At the end of 2005, respondent left the firm over "philosophical differences" involving its management. One month later, MLMIC fired respondent's wife for copying portions of the confidential file.

Both respondent and his wife testified to the devastating effect the situation had on their marriage and careers. Respondent, now working out of his home, was no longer able to practice insurance defense work, which he had been doing with much success for the majority of his legal career. Moreover, he claimed that the couple's income had drastically dropped by at least 80%.

In a report dated February 20, 2007, the Referee sustained all six charges and recommended respondent receive a public censure. In particular, the Referee observed:

> "There is no assertion by the DDC that Respondent sought or obtained any financial gain from this episode and I find no venal motive on his part. Additionally, I credit the Caliguiris' testimony that the copying of the file was done entirely by Mrs. Caliguiri without any prior solicitation or suggestion from respondent. However, when the file was presented to him by his wife, it is clear that Respondent should not have perused it or glanced at it; and should have immediately destroyed the papers and informed his client MLMIC of the occurrence and his wife's error in judgment."

In addition, the Referee determined that:

> "the term 'use' is no where defined in the Code and

counsel has not brought to my attention any case law defining the term in the context of a disciplinary proceeding. Accordingly, employing a broad sense and definition to the term 'use' in order to effectuate the purpose of DR 4-101—'Preservation of Confidences and Secrets of a Client'—I find that even if Respondent's testimony that he merely glanced at the files to see if his advice to Farley was correct he 'used' the secret files of his client to the client's disadvantage [DR 4-101 (B) (2)] and for the advantage of himself or a third person [DR 4-101 (B) (3)]. Tellingly, Respondent testified that 'I don't know exactly what I would have done' if the files contained information inconsistent with the advice he had previously given to Farley. Respondent thus 'used' his client's files in violation of the charged sections of the Code, even if it was only to satisfy his own curiosity since he admitted that had the files revealed something he did not fully expect he could not be sure what he would have done, i.e., tweaked the advice he had already given to Farley."

In support of a private reprimand, respondent pointed to his otherwise unblemished and lengthy career, the lack of personal gain or venality, his profound remorse and the disastrous personal and financial consequences he had already suffered. The Committee requested a suspension of "at least one year" because respondent's conduct went to the core of the attorney-client relationship which required that a client's confidences be kept secret.

The parties and the Referee acknowledged the lack of direct precedent. In determining the appropriate sanction, the Referee observed that in cases where a client's confidence was used for financial gain, a suspension was ordered; and in cases involving the misuse of files or papers in litigation not perpetrated for financial gain, public censure was ordered. Accordingly, in recommending public censure, the Referee concluded that

"[t]he present case involves no venal motive, albeit a serious lapse of judgment. Respondent has already paid a severe financial price for his actions by way of extensive loss of income and his marriage has been adversely affected. Respondent cooperated fully with the DDC and admitted all the facts and expressed sincere contrition, and he has a prior unblemished record."

A Hearing Panel heard oral argument and subsequently concurred in the Referee's findings of fact and sanction recommendation. In affirming and adopting the Referee's findings of fact, the Hearing Panel agreed that charges three and four should be sustained and declined respondent's "invitation to engage in a semantic inquiry into the essential meaning of the word 'use,' a word about as ordinary as a word can be." Instead, the Panel concluded that:

> "by continuing to provide advice to Farley after reading the documents Respondent must be deemed—or, if one prefers, conclusively presumed—to have used MLMIC's confidences and secrets in violation of DR 4-101 (B) (2) and (3). No other conclusion comports with common sense, and no other conclusion would give full protection to the interests safeguarded by the Rule."

The Panel further agreed that there was no prior case on point and found that none of the cases relied on by either side was close enough to be "persuasive" with respect to sanction. Thus, the Panel concluded:

> "Respondent's conduct was wrong, he knew it was wrong at the time, he admits it was wrong, he greatly regrets it and he offers no excuse. His conduct was, however, not venal—he neither received nor had any expectation of receiving any payment or other tangible benefit from helping Farley. Nor was his conduct in fact injurious to the client whose confidential information he learned and whose interests he knowingly disregarded.

> "We note in mitigation Respondent's otherwise blameless record over 25 years at the Bar. We also note the extreme financial loss Respondent and his wife have suffered directly as a result of his wrongful conduct: She was (not surprisingly) fired by MLMIC, and he has lost his entire medical malpractice defense practice; their combined income has fallen by 80% or more. We are also unanimous in concluding that Respondent's conduct was completely aberrational and that his continuing to practice law poses no danger to the public or to the administration of justice."

Concurring in the Referee's recommendation of public censure, the Panel explained that such a sanction would serve

to condemn respondent's conduct and put the bar on notice of its condemnation, while also recognizing the nonvenal, aberrational and regrettable nature of respondent's misconduct.

The Committee now seeks an order confirming the Referee's findings of fact and conclusions of law and the Hearing Panel's determination. The Committee makes no request for a specific sanction. Respondent asks this Court to disaffirm the finding that he was guilty of charges three and four and to impose either a private reprimand or public censure.

Contrary to respondent's assertions, we find that his conduct of reviewing the confidential documents belonging to his client constitutes "using" MLMIC's confidences and secrets in violation of DR 4-101 (b) (2) and (3) and, accordingly charges three and four were properly sustained.

With respect to the appropriate sanction, we note the Committee's lack of request for a specific sanction and the lack of cases directly on point. In addition, we observe that in those cases where the court ordered a suspension, the attorney misconduct was for personal gain (*see e.g. Matter of Kiczales*, 36 AD3d 276 [2006] [five-year suspension where attorney secretly agreed to receive compensation from represented adverse party in exchange for a favorable settlement and client information]; *Matter of Wisehart*, 281 AD2d 23 [2001], *appeal dismissed and lv denied* 96 NY2d 935 [2001] [two-year suspension where attorney improperly used adversary's privileged papers found on courtroom table to settle a case, violated court directive not to refer to the confidential information, and made reckless accusations against two judges]). In contrast, in those cases involving the misuse of files where there was no financial gain, the court imposed the lesser sanction of public censure (*see Matter of Katz*, 15 AD3d 1 [2005] [attorney improperly and belatedly executed document on behalf of client and misrepresented to court that client had timely executed and delivered document]; *Matter of Holley*, 285 AD2d 216 [2001], *lv denied* 97 NY2d 606 [2001] [improper release of client's sealed documents to the press and denial at hearing that he was informed it was under seal by the reporter]; *Matter of Lee*, 32 AD3d 74 [2006] [following termination of employment and in violation of court orders, former National Fuel Gas Co. staff attorney disclosed certain of his former employer's confidences and secrets learned during course of employment to media, government and law enforcement agencies during course of civil litigation, resulting in two findings of contempt based on 83 violations of prior court orders]).

Even though respondent did not seek to procure a financial benefit, he did breach a duty to his client by providing advice to a party adverse to his client. Thus, consistent with our holding in *Matter of Kiczales* (36 AD3d 276, 280 [2006]), we "find that such misconduct 'strikes at the heart of the attorney-client relationship, that is, the trust that clients place in their attorneys to pursue their legal interests.' " Accordingly, suspension is the appropriate sanction. However, given the numerous and significant mitigating factors in respondent's favor, including lack of personal gain or venality, profound remorse, total cooperation with the Committee, the devastating financial and personal consequences already suffered, and an otherwise unblemished 25-year career, we impose a suspension of one year.

Accordingly, the Committee's motion should be granted to the extent of confirming the Hearing Panel's determination, and respondent should be suspended for one year.

SAXE, J.P., MARLOW, NARDELLI and KAVANAGH, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of one year, effective February 29, 2008 and until further order of this Court.