[986 NYS2d 53]

In the Matter of GARY R. NOVINS (Admitted as GARY ROBERT NOVINS), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, May 13, 2014

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Jeremy S. Garber* of counsel), for petitioner.

*Mound Cotton Wollan & Greengrass* (*Barry R. Temkin* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Gary R. Novins was admitted to the practice of law in the State of New York by the Second Judicial Department on December 8, 1993 under the name Gary Robert Novins. At all times relevant to this proceeding respondent maintained an office for the practice of law within the First Department.

In February 2006, respondent was hired by Ginarte O'Dwyer Gonzalez Gallardo & Winograd LLP (the Ginarte firm), where he was assigned to work on *Bernardini v City of New York and Angel Villirrini* (sic), a personal injury action filed in June 1994. While off duty, Bernardini, a New York City police officer, had been shot and wounded in a bar by Villarini, another off-duty police officer. Although the Ginarte firm served the City with the summons and complaint, it never served Villarini.

In March 2007, the City was granted summary judgment in the personal injury action on the ground that the City had not negligently supervised Villarini because it did not have notice of his dangerous propensities. This Court affirmed (45 AD3d 466, 466 [1st Dept 2007], *lv denied* 10 NY3d 702 [2008]).

On January 12, 2008, while the motion for leave to appeal to the Court of Appeals was pending, respondent and Bernardini met in a restaurant and signed a "Personal Services Agreement" (the agreement) under which Bernardini agreed to "give" respondent 45% of any net recovery he received relating to the Villarini incident. This included the personal injury action and a legal malpractice claim to be brought against the Ginarte firm

> "for negligently failing to timely serve . . . Villarini,
> . . . for neglecting to work on [the] case over the

> many years, for failing to take the deposition of . . . Villarini, for having failed to obtain a copy of . . . Villarini's . . . . Personnel File in a timely manner and for failing to bring a Motion . . . , for spoliation of this key evidence."

Although the agreement, which respondent drafted, did not specify the services that he was to provide, respondent acknowledges that he agreed to serve as a witness for Bernardini in the malpractice action against his employer.

Respondent contends that Bernardini raised the subject of additional compensation, and that they negotiated the 45% fee to compensate respondent for his extraordinary efforts in the personal injury action and for his willingness to assist Bernardini in pursuing the malpractice claim, which would require him to leave the Ginarte firm. Bernardini asserts that he never expressed a desire to compensate respondent beyond what was in his retainer agreement with the Ginarte firm, and that he and respondent did not have any prior discussions regarding the agreement. Rather, respondent produced the agreement at the meeting and asked Bernardini to sign it, telling him that he had notes and documents that would prove the malpractice claim. Respondent later provided Bernardini with a list of malpractice attorneys and concealed the agreement from the Ginarte firm.

In May 2008, Bernardini commenced a malpractice action against the Ginarte firm and its principals. Between February and March 2009, respondent left a series of voice-mail messages for Bernardini, asking Bernardini to call him back. On April 28, 2009, respondent left Bernardini a message in which he referred to risking his neck by putting certain notes back into the personal injury action file which Bernardini would need for the malpractice action. In May 2009, respondent left a message stating that he would be leaving the Ginarte firm in 30 days and would be able to prove the malpractice and coverup. On May 28, 2009, respondent left a message complaining that he had called Bernardini about 30 times but received only one call back a few weeks earlier. Falsely stating that he had given up his job, respondent also said that he considered the agreement to be in full force and effect and threatened to throw out all the evidence in his possession unless Bernardini called him back. Ten minutes later, respondent left another message stating he would take appropriate recourse to enforce the agreement as soon as he left his firm. Respondent admits that the purpose of these calls was to compel Bernardini to honor the agreement, or

at least renegotiate its terms so that he could have some sort of financial recovery for the malpractice claim.

In April or May 2010, during the course of discovery, the Ginarte firm learned of respondent's secret side agreement with Bernardini, but did not fire him. On or about August 17, 2010, the firm learned of the messages respondent had left on Bernardini's voice mail. On August 20, 2010, respondent was deposed in the malpractice action, at which time he retreated from his prior accusations of malpractice against the Ginarte firm. On or about August 26, 2010, Bernardini filed a disciplinary complaint against respondent. On or about August 31, 2010, the Ginarte firm fired respondent, and on September 7, 2010 they filed a disciplinary complaint against him.

In 2012, the Departmental Disciplinary Committee (the Committee) brought six charges against respondent. Charge one alleged that by drafting, executing and having Bernardini sign the agreement, respondent violated Code of Professional Responsibility DR 2-106 (a) (22 NYCRR 1200.11 [a]) (entering into an agreement for an illegal or excessive legal fee), DR 5-103 (a) (22 NYCRR 1200.22 [a]) (acquiring a proprietary interest in a client's cause of action which exceeded a reasonable contingent fee) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) (conduct that adversely reflects on fitness as a lawyer). Charge two alleged that by drafting, executing and having Bernardini sign the agreement, and representing orally that he would testify for Bernardini in the malpractice action, respondent violated DR 7-109 (c) (22 NYCRR 1200.40 [c]) and rule 3.4 (b) of the Rules of Professional Conduct (22 NYCRR 1200.0) (acquiescing in the payment of compensation to a witness [himself] contingent upon the outcome of the case).

Charge three alleged that by entering the agreement, under which respondent agreed, in exchange for 45% of the net recovery, to help Bernardini in the malpractice action against the Ginarte firm while he was still employed by them, defendant violated DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]). Charge four alleged that by drafting, executing and having Bernardini sign the agreement, and concealing it from the Ginarte firm for over two years while he remained in their employ, defendant violated DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) and rule 8.4 (c) (conduct involving dishonesty, fraud, deceit or misrepresentation) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) and rule 8.4 (h).

Charge five alleged that certain of respondent's statements on the May 28, 2009 voice mails violated rule 3.1 (a) and (b)

(making frivolous assertions in a proceeding which serve merely to harass or injure another). Charge six alleged that respondent's statement in the first May 28, 2009 voice mail that he would destroy all the evidence in his possession regarding the malpractice case unless Bernardini called him back, violated rule 8.4 (d) (conduct prejudicial to the administration of justice).*

In his answer, respondent admitted the majority of the facts alleged by the Committee and acknowledged that the agreement "was wrong" and "inappropriate" and that the telephone messages "evince[d] a serious lapse of professional judgment." However, he denied that his conduct violated DR 2-106 (a), DR 5-103 (a), DR 7-109 (c) (22 NYCRR 1200.11 [a]; 1200.22 [a]; 1200.40 [c]) and rule 3.4 (b); as to the remaining violations, respondent cited mitigating factors and submitted that no discipline was necessary.

In a report dated May 30, 2013, the Referee found that respondent was ethically compromised when he had Bernardini, a client of the Ginarte firm, sign the agreement, which was "at best precatory and at worst misrepresentative, dishonest and unworthy of any lawyer," and that the agreement and respondent's subsequent telephone calls, which respondent admitted were "horrible, worse than the Agreement," violated DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]) and rule 8.4 (c) and (h). Although she stated that "[t]he ethical violations are clear and admitted," the Referee did not specifically state which charges should be sustained or dismissed. As to sanction, the Referee recommended a suspension of between three and six months, stating that only respondent, who had no prior ethical violations and had learned his lesson, was harmed by his misconduct; that respondent's family, financial and law firm pressures "may" have accounted for his aberrant behavior; and that punishment beyond a brief suspension might cause respondent to lose the position he now holds with an insurance company and would have little precedential value given the unique facts of this case.

In a report dated August 23, 2013, a Hearing Panel (Panel) unanimously recommended charges one through four and six be sustained, and that charge five be dismissed for insufficient evidence. The Panel found it troubling that respondent sought to

---

* Respondent was charged under the former Disciplinary Rules and the current Rules of Professional Conduct because the misconduct at issue occurred between January 2008 and May 2009.

charge Bernardini a contingency fee equal to 45% of net recovery for work on the personal injury case that he had already been paid for by the Ginarte firm, and for providing Bernardini with documents and testimony to assist him in the malpractice case, which testimony, if relevant, he would have been required to give without compensation. The Panel also found that respondent "should have recognized both that Bernardini was the firm's client (not his client individually) and that he owed a duty of loyalty to both Bernardini and the Ginarte firm," and that respondent perpetuated his misconduct for 15 months through his harassing and threatening phone calls. As to the sanction, a majority of the Panel recommended that respondent be suspended from the practice of law for one year.

The Committee now moves for an order, pursuant to Rules of the Appellate Division, First Department (22 NYCRR) § 603.4 (d), confirming the Panel's findings of fact and conclusions of law and suspending respondent for no less than one year. Respondent requests that this Court confirm the Referee's liability findings that he violated DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]) and rule 8.4 (c) and (h) only, and impose a public censure, or, in the alternative, impose a suspension between three and six months.

Based on the evidence adduced at the hearing, the Panel's findings of fact and conclusions of law as to liability with respect to charges one through four and six are amply supported by credible evidence, including respondent's admission of certain pertinent facts. As to charge one, the additional fee sought by respondent was excessive and unreasonable, and reflected adversely on his fitness as a lawyer in violation of DR 2-106 (a), DR 5-103 (a) and DR 1-102 (a) (7) (22 NYCRR 1200.11 [a]; 1200.22 [a]; 1200.3 [a] [7]). As to charge two, respondent acquiesced to the payment of compensation to himself as a witness, contingent on the outcome of a case, in violation of DR 7-109 (c) (22 NYCRR 1200.40 [c]) and rule 3.4 (b). As to charges three and four, respondent violated his duty of loyalty to both Bernardini and the Ginarte firm by attempting to charge a client for information that both he and the firm were ethically obligated to provide, and by concealing the agreement from his employer, in violation of DR 1-102 (a) (4) and (7) (22 NYCRR 1200.3 [a] [4], [7]) and rule 8.4 (c) and (h). As to charge six, respondent threatened to destroy evidence that was allegedly crucial to Bernardini's malpractice claim, in violation of rule 8.4 (d). The fact that respondent did not act on his threat does not warrant a different result.

Balancing all mitigating and aggravating factors, respondent's misconduct warrants a one-year suspension (*see Matter of Larsen*, 50 AD3d 41 [1st Dept 2008] [2¹/₂ year suspension for extensive misconduct involving, inter alia, charging a client an excessive fee and threatening arbitration if client did not withdraw letter of complaint to the court; sole means of support for divorced daughter and grandson cited as mitigation]; *Matter of Caliguiri*, 50 AD3d 90 [1st Dept 2008] [one-year suspension for improperly using documents surreptitiously obtained after agreeing to advise an inexperienced attorney in the prosecution of medical malpractice claim]; *Matter of Kiczales*, 36 AD3d 276 [1st Dept 2006] [five-year suspension for accepting payments from adverse party in exchange for information about his client and for assisting in obtaining a favorable settlement]; *Matter of Nurse*, 276 AD2d 24 [1st Dept 2000] [three-month suspension for, inter alia, threatening telephone messages directed at employer]; *Matter of Muller*, 231 AD2d 296 [1st Dept 1997] [six-month suspension for, inter alia, subjecting former girlfriend to numerous harassing telephone calls]).

Respondent argues that the Panel should not have discounted his testimony as to his family's psychological problems and the resulting financial difficulties as significant mitigation. He also points to his lack of prior disciplinary history in 20 years of practice and efforts to rehabilitate himself, and the fact that his misconduct, which involved a single client and was an isolated incident, cost him his job with the Ginarte firm. However, on the record before us, these factors do not warrant the imposition of a lesser sanction.

The violations are serious and were motivated by financial gain. Notably, as the majority of the Panel found, there is significant doubt as to whether respondent fully comprehends and accepts responsibility for his misconduct. Among other things, respondent fails to recognize that his advising Bernardini to bring a malpractice case against the Ginarte firm, pursuant to an unethical, dishonest and misrepresentative personal services agreement, reflected adversely on his fitness as a lawyer and involved dishonesty, fraud, deceit or misrepresentation. Nor does respondent recognize that threatening Bernardini with the destruction of evidence in order to obtain some sort of financial recovery for the malpractice claim was conduct adversely reflecting on his fitness as a lawyer and prejudicial to the administration of justice. In this regard, as the majority of the Panel found, respondent's attempt to minimize his culpability on the ground

that he could not or would not have been able to carry out this threat "belies his contention that he has learned from his mistakes."

Insofar as respondent relies on the medical conditions of family members and financial pressures as mitigating factors, there is ample basis for the Panel's finding that the conditions he described "seemed too remote in time to be either a causal or mitigating factor with respect to Respondent's misconduct." Indeed, the record would support the conclusion respondent conceived the agreement with Bernardini as a means to retaliate against the Ginarte firm because it cut his annual bonus by 75% after the personal injury action had been dismissed. Insofar as respondent seeks credit for disavowing the agreement, he belatedly did so out of self-interest after his relationship with Bernardini had deteriorated and the agreement was disclosed in the malpractice action.

The lack of pecuniary loss to Bernardini as a result of the agreement does not negate the gravity of respondent's intentional misconduct (*see Matter of Britton*, 232 AD2d 17 [1st Dept 1997]). Nor does the effect of the suspension on respondent's future livelihood warrant a lesser penalty in this case (*see Matter of Alperin*, 66 AD3d 309, 313 [1st Dept 2009]).

Accordingly, the Committee's motion should be granted, the Hearing Panel's findings of fact and conclusions of law sustaining charges one through four and six confirmed, and respondent suspended from the practice of law for a period of one year and until further order of this Court.

MAZZARELLI, J.P., ANDRIAS, DEGRASSE, FREEDMAN and GISCHE, JJ., concur.

Respondent suspended from the roll of attorneys and counselors-at-law in the State of New York for a period of one year, effective 30 days from the date hereof and until further order of this Court.