[729 NYS2d 128]

In the Matter of STEVEN L. HOLLEY (Admitted as STEVEN LYON HOLLEY), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, August 23, 2001

**APPEARANCES OF COUNSEL**

*Sarah Jo Hamilton* of counsel (*Thomas J. Cahill*, attorney), for petitioner.

*Elkan Abramowitz* of counsel (*Morvillo, Abramowitz, Grand, Iason & Silberberg, P. C.*), and *E. Leo Milonas* of counsel (*Pillsbury Winthrop, L. L. P.*), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Steven L. Holley was admitted to the practice of law in the State of New York by the First Judicial Department on April 16, 1984 as Steven Lyon Holley. At all times relevant to this proceeding, he maintained an office for the practice of law within the First Judicial Department.

On or about January 27, 1998, respondent was served with a notice and statement of charges which alleged that he violated several Disciplinary Rules. Respondent was charged with engaging in professional misconduct by improperly disclosing a sealed court document to the legal affairs editor of Business Week magazine and then falsely denying at an evidentiary hearing before a Federal judge, and later at a deposition before the Departmental Disciplinary Committee (DDC), that the journalist had alerted him to the fact that the documents he sent her the previous day had been sealed.

The Referee, after conducting a hearing on the charges, by report dated September 4, 1998, recommended dismissal of all of the charges. A Hearing Panel heard oral arguments and by a vote of 4-1, confirmed the Referee's report. The dissenting Panel member recommended that Charge One, alleging a violation of Code of Professional Responsibility DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3) (conduct which adversely reflects on a lawyer's fitness to practice law), be sustained and that respondent "at a minimum receive a letter of reprimand, a censure or a brief suspension from the practice of law."

By a motion dated January 29, 1999, the DDC moved for an order disaffirming the determination of the Referee and the majority of the Hearing Panel which recommended dismissal of the charges against respondent and, instead, sustaining all the charges against respondent and imposing any sanction the Court deemed appropriate or, referring the matter to a Referee for a hearing as to sanction.

By an order dated May 5, 1999, this Court "granted the motion to the extent of disaffirming only so much of the decision and recommendation of the Referee and the determination by the majority of the Hearing Panel to dismiss charge one, and said charge is reinstated and sustained. The findings and

conclusions of the Referee and the majority of the Hearing Panel are otherwise confirmed." That order also appointed a different individual to act as Referee "to conduct a hearing and file a report in regard to the imposition of an appropriate sanction with respect to charge one."

The sanction hearing began on August 3, 1999, at which time witnesses testified to respondent's good character and reputation for veracity. There was also testimony regarding the financial sanction imposed on respondent by his firm, Sullivan and Cromwell, for his misconduct, the changes made in firm policy and the consequences to the firm and client resulting from respondent's disclosure of the sealed document.

Respondent testified that from 1988 to 1993 he was a member of the Committee on Professional and Judicial Ethics at the City Bar Association; that he had been reprimanded by the firm and his share of the firm's profits was reduced by 40% initially, and totaled several hundred thousand dollars a year, for the years 1995-1999, and he described the negative publicity and hostility he had encountered. Oral arguments were held on January 6, 2000, at which respondent argued against any sanction.

By a report dated November 9, 2000, the Referee recommended a "reprimand with a referral to the Court with a recommendation as to censure."

The Referee found that respondent's character evidence established that he was professionally competent and had a reputation for veracity and credibility. However, he found that respondent's failure to at least ask the associate who supplied the copy of the document whether delivery of the same to the media would create problems was not only negligent, it was reckless.

Noting that the purpose of a sanction is not to punish but to protect the public through notice to the profession that certain conduct will not be tolerated, and, relying on section 4.23 of the American Bar Association Standards for Imposing Lawyer Sanctions, the Referee agreed with the Committee that public censure was warranted.

A Hearing Panel, by a report dated January 18, 2001, also recommended a sanction of public censure. The Panel noted, by way of mitigation, that respondent has had an unblemished career, enjoys a good reputation for his legal skill and honesty, and has suffered as a result of his conduct in having been the subject of adverse publicity and having been financially

sanctioned by his law firm. The Panel, however, rejected the Referee's characterization of respondent's conduct as reckless, but noted that this Court implicitly found that he had acted unreasonably when it determined that he engaged in conduct adversely reflecting on his fitness to practice law.

The Panel determined that respondent acted negligently in failing to ascertain that the amended complaint had been filed under seal. Although they found that there were no warning signs alerting respondent, nevertheless, the Panel concluded that a lawyer must generally preserve the confidentiality of information relating to a client, even information contained in judicial filings.

The Panel opined that from the perspective of the Bar and the public it was of crucial importance to put attorneys on notice of the standard of conduct on which this Court's decision was implicitly premised. The Panel further noted that it was unlikely that respondent would engage in misconduct in the future, that he had already suffered significant adverse consequences and that if it were not necessary to alert the Bar to a previously unannounced standard of misconduct, any sanction would be excessively harsh and of no conceivable value.

The Committee argues that public sanction was appropriate in this case where respondent, in violation of his firm's internal policy and in his duty to his client, did not take ordinary precautions to determine if he was acting in the best interest of his client when he turned over the document without any inquiry. In addition to the "harm" previously mentioned, respondent's careless conduct resulted in a conflict between clients of the law firm.

Respondent argues that this Court should disaffirm the recommendation of the Referee and Hearing Panel and impose no sanction at all. Respondent suggests that under all of the circumstances including: the absence of any aggravating factors; the presence of "numerous" mitigating circumstances; the lack of potential or actual injury to his firm, the client or the Federal court; the lack of case precedent; and that his due process rights were violated, this Court should refrain from imposing any sanction, let alone a public censure.

While it is true that the Referee found respondent behaved recklessly by not making an inquiry of the associate and the Hearing Panel disagreed, finding instead that he had behaved negligently, a prudent and reasonable attorney would have, at a minimum, made some kind of inquiry and, DR 1-102 (a) (8) (now [7]), by its very wording and by previous application, en-

compasses this behavior no matter what the characterization. Indeed, whether he acted recklessly or negligently does not matter since, either way, respondent's failure to take adequate precautions to safeguard confidential materials of a client, even if considered unintentional, was careless conduct that reflects adversely on his fitness to practice law (*Matter of Marrin*, 207 AD2d 239).

There is no merit to respondent's assertion that based upon the principle of *expressio unius est exclusio alterius,* DR 1-102 (a) (8) (now [7]) cannot be construed to prohibit negligent disclosure because DR 4-101 (b) (22 NYCRR 1200.19) specifically prohibits the intentional disclosure of client secrets. Not only does the wording of DR 1-102 (a) (8) (now [7]) address misconduct not specifically listed in DR 4-101 (b), but, as the Committee argues, statutory construction does not remove negligent disclosure of a secret from the purview of the Code.

With regard to notice, respondent argues that he cannot, consistent with the requirements of due process, be sanctioned for violating a standard of conduct that had never before been announced.

In *Matter of Holtzman* (78 NY2d 184, 191, *cert denied* 502 US 1009), the Court of Appeals, referring to the same disciplinary rule at issue herein, noted that "[b]road standards governing professional conduct are permissible and indeed often necessary" where it is almost impossible to enumerate every offense for which an attorney ought to be removed or disciplined. Thus, the Court in *Holtzman* found that "the guiding principle must be whether a reasonable attorney, familiar with the Code and its ethical strictures, would have notice of what conduct is proscribed" (*id.,* at 191). Contrary to respondent's assertion, this Court did not set a new standard of care. Rather, respondent's conduct violated the everyday, ordinary standard of care. Indeed, a reasonable attorney would have been on notice that revealing sensitive information about client matters to reporters could be held to reflect adversely on his or her fitness as a lawyer. The fact that this case is one of first impression does not mean that no discipline should be imposed.

Nor is the recommended sanction punitive, as respondent urges. Respondent complains that, as a litigator who practices nationally, he will be severely prejudiced by a sanction that impairs his ability to secure admission pro hac vice in numerous State and Federal jurisdictions. In some of these jurisdictions, the pro hac vice requirements call for disclosure of, or are affected by, discipline less than suspension or disbarment.

While this collateral consequence may prove embarrassing to respondent, it is certainly not unduly harsh, as claimed. Moreover, the Hearing Panel specifically took this factor into consideration when determining its recommended sanction. With regard to his character evidence, respondent makes much of the testimony concerning his carefulness as an attorney and his professionalism. While this may be true, the fact remains that his lack of diligence in this instance resulted in his turning over a sealed document to a journalist without even asking why she wanted it or why she did not get it from the Federal court.

Respondent further argues that there is a lack of prejudice if a stay is granted permitting him to appeal to the Court of Appeals and there will be irreparable harm to respondent in the absence of a stay.

Under all the facts and circumstances, a sanction of public censure is fully warranted. There is no reason for this Court to grant a stay pending appeal.

Finally, given that this case is one of first impression, respondent urges the Court to publish its opinion on an anonymous basis. However, the Court sees no reason to grant anonymity to this opinion. Respondent's act of casually turning over a document to a journalist without first determining whether it was restricted or not and knowing that it would be subject to the possibility of widespread dissemination, was a critical lapse in professional and moral responsibility.

Accordingly, the Committee's motion to confirm should be granted, and respondent publicly censured. Respondent's request for a stay pending appeal to the Court of Appeals and for publication of the opinion on an anonymous basis should be denied.

TOM, J. P., WALLACH, LERNER, RUBIN and FRIEDMAN, JJ., concur.

Petition granted, and respondent publicly censured.