[869 NYS2d 523]

In the Matter of STEVEN J. LEVER (Admitted as STEVEN JON LEVER), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 30, 2008

## APPEARANCES OF COUNSEL

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Raymond Vallejo* of counsel), for petitioner.

*Hinshaw & Culbertson LLP* (*Hal Lieberman* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Steven J. Lever was admitted to the practice of law in the State of New York by the Second Judicial Department on September 20, 2000. At all times relevant to these proceedings, respondent maintained an office for the practice of law within the First Judicial Department.

In November 2006, respondent was served with a notice and statement of charges alleging that he engaged in illegal conduct that adversely reflected on his honesty, trustworthiness or fitness as a lawyer (*see* Code of Professional Conduct DR 1-102 [a] [3] [22 NYCRR 1200.3]), and further engaged in conduct that adversely reflected on his fitness as a lawyer (*see* DR 1-102 [a] [7]). Both charges arose from respondent's September 27, 2005 guilty plea in Supreme Court, Suffolk County, to the crime of attempted criminal sex act in the third degree (Penal Law §§ 110.00, 130.40 [2]), a class A misdemeanor. Underlying the guilty plea was respondent's admission that he engaged in sexually explicit conversations over an Internet chat room with an undercover police officer posing as a 13-year-old girl, followed by his attempted meeting with the presumed minor for purposes of sexual contact. Respondent filed an answer in this proceeding, admitting the charges and requesting a hearing on mitigation.

In February 2007, a hearing was held before a Referee. For the most part, the dissent has accurately stated the evidence adduced at the hearing, which will not be repeated herein. The only omission was the testimony of two character witnesses. The first character witness, the chair of the intellectual property practice at a law firm, testified that he first met respondent in 1998, when he was respondent's supervising attorney at a New York City law firm. After his arrest, respondent called this attorney and told him what he had done. The witness testi-

fied that respondent had a reputation for honesty and integrity, notwithstanding the events leading to his conviction, and that respondent has a pending job offer with his current firm once these disciplinary proceedings are concluded.[1] A second character witness testified that she grew up with respondent, and was close friends with his sister. She further testified that she had kept in touch with respondent, who had a reputation for being a smart and honest person, even after his conviction.

At the conclusion of the hearing, the Referee recommended a six-month suspension in light of the considerable evidence in mitigation. Although recognizing the seriousness of respondent's offense, the Referee was persuaded by the fact that there was no actual sexual contact with a minor, and that respondent "seems to have taken major steps to avoid any repetition of this abhorrent conduct."

A Hearing Panel of six Committee members heard oral argument and issued a report. The Panel distinguished, as inapposite, the case law relied upon by the Referee, on the ground that such cases did not involve minors at all, nor did they include sexually explicit conversations, followed by an attempted meeting with a minor for the purpose of engaging in sexual conduct. Instead, the Panel took the view that "preying upon . . . minors for sexual gratification by means of the internet should be dealt with more harshly" than the six-month suspension proposed by the Referee. Accordingly, a majority of the Panel recommended that respondent be suspended for three years, or until the end of his criminal term of probation, whichever was longer, and that any reinstatement be conditioned upon a psychiatric evaluation. A sole dissenter on the Panel believed that a one-year suspension was appropriate.

The Committee now seeks an order confirming the Hearing Panel's findings of fact and conclusions of law, and imposing the Panel majority's recommended sanction of a suspension of three years, or until the conclusion of respondent's probationary period, whichever is longer. The Committee notes the lack of New York precedent involving attorney discipline matters involving convictions for sexually explicit conversations with a minor over the Internet, followed by an attempted in-person meeting. Committee staff further notes that despite its initial recommenda-

---

1. After his arrest in 2004, respondent's employment was terminated by his law firm. He remained unemployed until January 2006, when he began temporary employment on a contract basis doing document review, corporate law firm litigation support and other projects.

tion of a six-month suspension, "upon reflection" it is persuaded that the three-year (or longer) suspension proposed by the Hearing Panel would send a strong message to both the bar and public that sexual misconduct involving minors will be met with a significant sanction.

Respondent has submitted a memorandum recommending an adoption of the Referee's report, including the recommended six-month suspension. He argues that the Hearing Panel ignored the substantial evidence of mitigation in his case. Further, he points to two disciplinary cases from sister states involving attorneys convicted of crimes involving sexually explicit conversations with minors over the Internet that resulted in less severe sanctions than a three-year suspension (*see In re Disciplinary Proceedings Against Engl*, 283 Wis 2d 140, 698 NW2d 821 [2005] [public reprimand]; *Attorney Grievance Commn. of Md. v Childress*, 364 Md 48, 770 A2d 685 [2001] [indefinite suspension, with no right to apply for reinstatement for at least one year]). Finally, respondent cites New York disciplinary cases where lawyers serving probation in criminal cases have been allowed to continue practicing law (*see e.g. Matter of Cutler*, 227 AD2d 8 [1996]; *Matter of Minkel*, 221 AD2d 28 [1996]), although none of these cases involved sexual conduct involving minors.

In determining an appropriate sanction for respondent's misconduct, we consider both the nature and severity of respondent's criminal conduct, as well as any aggravating or mitigating circumstances. We are further guided by the principle that the purpose of a disciplinary proceeding is not to punish the respondent attorney, but rather to determine the fitness of an officer of the court and to protect the courts and public from attorneys that are unfit for practice (*Matter of Wong*, 275 AD2d 1, 6 [2000]).

At the outset, we share three points of agreement with the dissent. First, respondent's use of the Internet to prey on minors for purposes of sexual gratification is despicable and dangerous misconduct, that has brought shame to himself and to this state's bar. Second, serious misconduct of this type necessarily requires a significant sanction that will convey to members of the bar and public that this Court will not permit attorneys who engage in such immoral and criminal behavior to continue practicing law. Finally, we agree that there are no New York disciplinary cases directly on point, which requires us to review the most analogous precedents from this and other jurisdictions.

The most factually analogous case cited by either party is *In re Disciplinary Proceedings Against Engl* (283 Wis 2d 140, 698 NW2d 821 [2005]). The facts in *Engl* are nearly identical to the instant matter, where a young lawyer had sexually explicit conversations over the Internet with a police detective posing as a 14-year-old girl, and then arranged a meeting with the alleged minor, leading to his arrest. The attorney pleaded guilty to a class D felony and was sentenced to four years' probation, with conditions. Subsequently, the attorney stipulated with the Wisconsin disciplinary authorities that he had violated the disciplinary rules and that a public reprimand was the appropriate sanction. The stipulation specifically recited that a more severe sanction was not imposed due to the substantial evidence of mitigation, including a lack of prior disciplinary history, the attorney's extreme stress caused by long work hours and the recent death of his mother, his cooperation with the criminal and disciplinary authorities, his actual remorse and a report from his therapist that he was unlikely to reoffend (283 Wis 2d at 142-143, 698 NW2d at 822-823).

Although we are convinced that the public reprimand in *Engl*, the equivalent of a public censure in New York (*Matter of Maiorino*, 301 AD2d 53, 56 [2002]), would be too lenient a sanction for the misconduct in this case, we agree with the *Engl* court's implicit finding that disbarment is not the exclusive sanction for a single sexual offense involving solicitation of a minor, especially where significant mitigation exists (*see also Disciplinary Counsel v Goldblatt*, 118 Ohio St 3d 310, 888 NE2d 1091 [2008] [indefinite suspension imposed on attorney who solicited sexual encounter with underage girl, and downloaded images of nude children after conviction, where substantial mitigation exists]; *Matter of Christie*, 574 A2d 845 [Del 1990] [three-year suspension for providing alcohol, showing x-rated videotapes and masturbating in presence of teenage boys, where substantial mitigation shown]; *see also Matter of Herman*, 108 NJ 66, 527 A2d 868 [1987] [retroactive three-year suspension appropriate sanction for attorney who committed second-degree sexual assault, but who cooperated with authorities and voluntarily suspended his practice]).

Another case with many similarities is *Attorney Grievance Commn. of Md. v Childress* (364 Md 48, 770 A2d 685 [2001]), which involved a lawyer who engaged in sexual conversations with several young girls whom he believed were between 13 and 16 years of age via Internet chat rooms. The attorney in *Chil-*

*dress* convinced five underage girls to meet with him, but no sexual contact or conversations occurred during these meetings. The attorney was eventually arrested in a sting operation, and in a 4-2 decision, the Maryland Court of Appeals imposed an indefinite suspension, with no opportunity for reinstatement until after one year (364 Md at 64-67, 770 A2d at 694-697). The dissenters argued, as does the dissent here, that the nature of the sexual crime against minors demanded the ultimate sanction of disbarment (364 Md at 67-75, 770 A2d 697-701).

In our view, the sanction in *Childress* was again too lenient, especially given the multiple victims and pattern of misconduct involved in that case. However, we agree with the Maryland court's willingness to at least examine the facts underlying the crimes, as well as the aggravating and mitigating circumstances, before deciding on an appropriate sanction. As was the case in *Engl* and in this case, the court in *Childress* found substantial mitigation, which included actual remorse and an expert psychiatric opinion that Childress posed an "insignificant risk" of similar behavior (364 Md at 66, 770 A2d at 696).

In urging disbarment as the only appropriate sanction in this case, the dissent relies on factually distinguishable cases which involved an attorney's actual sexual contact with a minor. The distinction is significant. In *Matter of Harlow* (280 AD2d 870 [2001]), the Third Department disbarred an attorney who had engaged in sexual conversations with a minor over the Internet, and then, after arranging a meeting with the minor, had actual sexual contact with her. The attorney was convicted in Connecticut of a felony, and given a 10-year suspended sentence. The Connecticut disciplinary authorities suspended respondent for the same 10-year period, but in the New York serious crime proceeding, the court determined, without comment, that disbarment was required (*id.*).

While the dissent argues that "[t]he only substantive difference between *Harlow* and the instant case is that here, respondent was caught in a police sting," in fact, the actual legal distinction between the two incidents is that the attorney in *Harlow* committed a crime involving actual sexual contact with a minor, while this respondent did not. Given that most states' penal statutes treat sexual contact with a minor as a higher-grade crime than an attempt to commit such a crime (as would be the case in a sting operation), there is no basis for us to ignore that distinction in attorney disciplinary proceedings. Respondent's sanction should be premised on what he was

convicted of doing, not what he might have done if circumstances were different. Another stark difference in *Harlow* is that there was not a shred of discussion concerning any mitigation in that case, which suggests that the attorney in *Harlow* made no demonstration that he was deserving of any leniency. Here, in contrast, the evidence offered in mitigation was detailed and compelling.

The dissent further argues that *Matter of Singer* (290 AD2d 197 [2002]) mandates disbarment in this case. We respectfully disagree. In *Singer*, an attorney was convicted in Virginia state court of aggravated sexual battery, and was sentenced to a term of 20 years, with 16 years and eight months suspended, and lifetime probation. Although this Court rejected the Hearing Panel's recommendation of a five-year suspension and disbarred respondent due to the "disturbing nature of the crime and the aggravating factors" (*id.* at 200), the dissent fails to mention the significant factual distinctions in that proceeding.

First, unlike this case, the respondent in *Singer* had actual sexual contact with a minor. Second, the misconduct in *Singer* was not isolated, as the respondent admitted similar conduct with five other minors over a 10-year period. Third, the penalty imposed in *Singer* was much longer than this respondent's sentence in the Suffolk County criminal case, indicating that a more severe disciplinary sanction was appropriate. Fourth, unlike here, there was a "glaring absence" of character letters on that respondent's behalf, and his own therapist had described him as having "lifelong pattern of maladaptive behavior" (*id.*). These significant differences, especially the admission of a pattern of criminal conduct involving minors over a long period, clearly indicates that the respondent in *Singer* posed a continuing risk to children that warranted the most severe sanction of disbarment. Thus, while disbarment may have been "mandate[d]" in *Singer*, the decision is not controlling here.[2]

---

2. Nor do we find dispositive recent cases from other jurisdictions which have imposed disbarment for sexual crimes involving minors. In each of these cases, the conduct involved was distinctly more egregious, or involved multiple crimes or victims (*see e.g. In re Disciplinary Proceeding Against Day*, 162 Wash 2d 527, 173 P3d 915 [2007] [attorney convicted of first-degree child molestation of 11 year old and sentenced to 60 months to life in prison disbarred]; *In re Domm*, 965 So 2d 380 [La 2007] [attorney with extensive disciplinary history who failed to answer charges disbarred for molestation of nine-year-old girl, despite nonprosecution of offense]; *Iowa Sup. Ct. Attorney Disciplinary Bd. v Blazek*, 739 NW2d 67 [Iowa 2007] [disbarment ordered based on

The dissent also mistakenly disregards this Court's decision in *Matter of Maiorino* (301 AD2d 53 [2002]) because it was a reciprocal discipline proceeding. In *Maiorino*, the respondent attorney was convicted in Connecticut of fourth-degree sexual assault for the improper touching of a minor, and was sentenced to a one-year suspended term and two years' probation. As a result of the conviction, the New Jersey disciplinary authorities recommended that respondent be publicly reprimanded, noting the substantial mitigation present, including his youth and lack of maturity, his actual remorse, numerous letters attesting to his good character and an absence of any relationship between his misconduct and the practice of law.

While the dissent suggests that we simply adopted the New Jersey sanction in *Maiorino* without further scrutiny, in fact, we quoted the recommendation of the New Jersey Disciplinary Review Board's discussion of mitigating circumstances at length in our decision, a clear sign that we independently assessed the severity of the sanction and found it appropriate under the circumstances (*id.* at 55-56). Although, it is true, that this Court in a reciprocal disciplinary proceeding will often defer to the sanction initially imposed by a foreign jurisdiction, our precedents are equally clear that we are not bound by that sanction, and may impose a more severe penalty if the circumstances warrant (*Matter of Dranov*, 26 AD3d 26, 30-31 [2006] [imposing more severe sanction in reciprocal disciplinary proceeding than that imposed by another state, which was "significantly too lenient"]). Thus, while the sanction in *Maiorino* was too light (even with the considerable mitigation), the decision nevertheless supports a sanction short of disbarment here.

Upon our review of these precedents, and our consideration of the nature and severity of respondent's offense, the aggravating and mitigating circumstances, and the impact of such offense on the bar and public, we conclude that the Hearing Panel's recommendation of a suspension of three years, or until the conclusion of respondent's probationary period, whichever is longer, is appropriate. As noted, misdemeanor convictions involving sexual solicitation of minors that do not involve sexual contact generally result in a suspension, not disbarment (*see*

convictions for multiple sex crimes, plus prior sex crime conviction]; *In re Aguillard*, 958 So 2d 671 [La 2007] [disbarment ordered where attorney convicted of two felony sex crimes involving minors, including one involving sexual contact]; *but see In re Wright*, 949 A2d 583 [DC 2008] [disbarment where attorney sent sexually graphic pictures to person believed to be 15 years old, but no apparent sexual contact]).

*Engl*; *Childress*). Further, even if we agreed with the dissent that the offense, by itself, would ordinarily require disbarment, the substantial and credible mitigation evidence offered by respondent in this case requires us to consider a lesser sanction. From the beginning, respondent has admitted responsibility for his actions and has taken "uncommon" efforts to rehabilitate himself. After his arrest, he voluntarily entered sex offender treatment and all evidence in the record supports the therapist's opinions that such therapy appears to be working and that the likelihood of respondent repeating the misconduct was "low." Further, respondent cooperated with the criminal investigation and with Committee staff in their investigations, and he has no prior disciplinary record.

Finally, while respondent's grave misconduct unquestionably impugns the integrity of attorneys in general, and in this state in particular, our review of the record indicates that the Hearing Panel carefully considered this impact, and nevertheless concluded that a three-year or longer suspension carrying through the end of respondent's probationary term was adequate to protect the public and deter future misconduct. We do not agree with the dissenter's view that every registered sex offender merits disbarment. Attorney disciplinary proceedings must be determined on the specific facts and circumstances before us, and not on stigmatizing labels or speculative predictions about an attorney's potential for rehabilitation or fitness to practice.

Nevertheless, in light of the inherent difficulty in predicting whether respondent's rehabilitative efforts will ultimately render him fit to resume practicing law at the conclusion of his term of suspension, we take the additional precaution of conditioning any reinstatement of respondent on his submission to an independent psychiatric evaluation by a qualified expert in psychological sexual disorders, at respondent's sole cost and expense (*see* Rules of App Div, 1st Dept [22 NYCRR] § 603.14 [e] [v]). Prior to filing any motion for reinstatement, respondent may communicate with the Committee regarding the selection of such an expert, but the designation of such qualified expert shall be made by the Court, in accordance with this Court's analogous procedure for determining whether an attorney may be reinstated upon the termination of a disability (*see* Rules of App Div, 1st Dept [22 NYCRR] § 603.16 [e] [1] [court may take necessary action to determine whether attorney's disability has been removed, "including a direction of an examination of the

attorney by such qualified experts as this court shall designate"]).

Accordingly, the Committee's motion to confirm the Hearing Panel's findings of fact and conclusions of law, and the recommended sanction, should be granted, and respondent suspended, effective immediately, for a period of three years, or until the expiration of his criminal term of probation, whichever is longer, with reinstatement being conditioned on an independent psychiatric evaluation by a qualified expert.

CATTERSON, J. (dissenting). Because I believe that a convicted and registered sex offender has forfeited the privilege of admission to the bar and the elevated status of an officer of the court, I must respectfully take the unusual step in a disciplinary proceeding and dissent.[1]

It is uncontested that in July 2004, while using his law office computer, respondent, then 30-years old and a patent lawyer, logged onto an Internet instant-messaging service and entered a chat room specifically targeting "older men and younger women." He commenced an online conversation with a female who claimed she was 13 and who purportedly lived with her mother on Long Island but who was, in fact, a police officer. The chat room was "sexually oriented" and there was "significant sexual content" in the six separate conversations that followed over a period of three months. On October 16, 2004, after three months of these sexually explicit conversations, respondent, in further online conversations, arranged to meet the girl the next day at the Ronkonkoma train station in Suffolk County. They exchanged photos over the Internet to ensure that they could identify each other so as to consummate their prearranged sexual liaison.

On October 17, 2004, respondent traveled on the Long Island Railroad from Manhattan to Ronkonkoma, admittedly "to

---

1. The great common-law scholar Karl Llewellyn posited that judges "seeking right and justice both perceive the facts and turn for standards to the body of met and organized experience with which they are equipped. These 'experience-spectacles' must of necessity yield differing results both of intake and applicable standard, must yield results which differ increasingly as our modern variegated world dilutes community of experience among the individual members of the bench and multiplies and differentiates the situations out of which conflicts emerge to be adjudicated."(Karl N. Llewellyn, Common Law Tradition: Deciding Appeals, at 463 [William S. Hein & Co. 1996].) This dissent is born of a recognition that my distinguished colleagues' "experience-spectacle[ ]" is necessarily different from mine with regard to issues presented here.

engage in an oral sexual act" with a female whom he believed to be a 13-year-old girl. Upon his arrival he was arrested. At that point, he learned for the first time that the 13-year-old girl with whom he had anticipated having sex was actually a Suffolk County police detective. Respondent was charged with six counts of disseminating indecent material to minors in the first degree (Penal Law § 235.22), a felony, and one count of attempted criminal sexual act in the third degree (Penal Law §§ 110.00, 130.40 [2]), a misdemeanor.

On September 27 2005, respondent pleaded guilty in Supreme Court, Suffolk County to attempted criminal sexual act in the third degree, a class A misdemeanor (Penal Law §§ 110.00, 130.40 [2]). On November 22, 2005, he was sentenced to a period of probation of six years and was certified as a level one sex offender. He was ordered to participate in and successfully complete a sex offender treatment program, and ordered to pay a $1,000 fee and a mandatory surcharge of $260.

As respondent admitted to the conduct, he testified on his own behalf in mitigation. He took responsibility for his criminal conduct, admitting that he knew at the time that attempting to engage in sex with someone less than 17 years of age was a crime. Astoundingly, he testified that it was *"probably* inappropriate" for him to have engaged in such conversations with someone he believed was 13 years old. Respondent stated that the incident in question was the only instance where he attempted to meet with an underage person online for the purpose of having sex. He admitted that he had previously met women online for the purpose of having sex but they allegedly were of legal age.

The Referee found that respondent appeared "truly remorseful and shamed by his conduct," and that he had cooperated with the Committee and had no disciplinary record. Respondent seemingly accepted full responsibility for his actions and testified that he had suffered personally in that he now had a criminal record and was a registered sex offender, and that he had suffered financially (loss of high paying job, costs of ongoing therapy), and suffered humiliation among his family and colleagues. He explained that at the time of the incident he was under great stress from work, and social and family relationships (80-hour work weeks, recent breakup with girlfriend of one year, father diagnosed with cancer, and grandfather's suicide the previous year). Regarding treatment, respondent began counseling before he was ordered to do so (albeit only after he

was arrested) and has continued with both individual and group therapy ever since. The mandated sexual offender treatment program had no date certain for completion of the program and respondent testified that he was in compliance with the terms of his probation.

Respondent's psychologist testified that he began individual therapy sessions with respondent in December 2005 and believed respondent would not engage in the type of conduct again because he did not need to, and because respondent was terrified of what the consequences would be if he repeated the behavior. Notably, respondent seems to have been far more concerned with being caught a second time rather than remorseful over the possible effect of his acts upon any juvenile victim. The psychologist also stated that the recidivism rate of sex offenders was "sky high" but that he did not diagnose respondent as a sex offender. Notably, the Referee rejected his overall testimony, finding it inconsistent and often at odds with itself.

The Referee, however, did credit the testimony of a psychotherapist and clinical social worker who specialized in treating sex offenders and who had worked as a probation officer supervising individuals who committed sex crimes or domestic crimes. Respondent enrolled in the therapist's treatment program about six weeks after his arrest, in December 2004, and thereafter has regularly attended the program. The therapist testified that based on the assessment given under the Sex Offender Registration Act, there is a minimal chance that respondent would repeat his actions. In addition, because respondent did something that was "uncommon" in that, even prior to his conviction he voluntarily entered the group therapy treatment program, took responsibility for his actions, and showed shame, guilt and remorse, the likelihood respondent would reoffend was low. Using the Diagnostic and Statistical Manual of Mental Disorders (4th ed 1994) (DSM 4), the therapist diagnosed respondent with "sexual disorder not otherwise specified," explaining that the DSM 4 still hadn't come up with a specificity for people who commit sex crimes through the Internet.

The Referee recommended a six-month suspension on the grounds that, inter alia, this was a case where a police detective posed as the 13-year-old girl and thus there was "no actual contact with a minor." The Hearing Panel recommended a three-year suspension with one dissenter arguing for a one-year suspension.

For the reasons that follow, I believe that any penalty short of disbarment would not comport with the standards to which a member of the bar should adhere. I do not believe that we can reconcile the status of registered sex offender with that of a member of the bar in good standing.

At the outset, I note that there is no New York decisional authority directly on point. However, there are some cases that are germane to the analysis. *Matter of Harlow* (280 AD2d 870 [3d Dept 2001]) presented a strikingly similar set of facts. In that case, the respondent attorney also corresponded with a 13-year-old girl over the Internet and arranged to meet with her to have sex. Unfortunately for both the respondent and the victim of his predations, the victim was not an adult police detective posing as an underage girl in a sting operation. As respondent actually had sexual contact with the victim, he was convicted in Connecticut and given a suspended sentence of 10 years. Ultimately, Connecticut chose to suspend respondent for 10 years as well. The Third Department declined to follow Connecticut's sanguine view of the matter and, instead, disbarred him. The only substantive difference between *Harlow* and the instant case is that here, respondent was caught in a police sting. But for that fortuitous intervention, it is beyond cavil that respondent fully intended to have sex with a 13-year-old girl in Suffolk County. Indeed, respondent admitted that this was his intention.

The subsequent case of *Matter of Maiorino* (301 AD2d 53 [1st Dept 2002]) involved a New Jersey attorney convicted in Connecticut of the improper touching of a minor. He received a one-year suspended sentence in Connecticut and a reprimand in New Jersey based on that Connecticut conviction. This Court's censure of respondent was premised on nothing more than the doctrine of reciprocal discipline under 22 NYCRR 603.3. Leaving aside the wisdom of relying on reciprocal discipline in a sex-based conviction of a member of the bar, the case has no further applicability to the instant proceeding, where the respondent New York attorney was convicted in New York for a crime committed in New York.

Similarly, *Matter of Wong* (275 AD2d 1 [1st Dept 2000]) involved reciprocal discipline of another New Jersey attorney. Respondent was disciplined in New York based on respondent's sexual contact with a 10-year-old girl at a gymnastics event two years prior to his admission to the New Jersey bar. The sole question presented by *Wong* was whether preadmission conduct

unrelated to the admission process could constitute misconduct under 22 NYCRR 603.3 (c) (3). The Court held that such preadmission conduct could be considered as part of its responsibility to protect "the public and to maintain the integrity of the courts." (275 AD2d at 6.) Again, *Wong* was a reciprocal discipline case with a limited holding; there is no discussion of the propriety of the penalty imposed in New Jersey.

This Court's decision in *Matter of Singer* (290 AD2d 197 [1st Dept 2002]), like the Third Department's holding in *Harlow* (*supra*), also mandates disbarment in the instant case. In *Singer*, the respondent was convicted in Virginia of aggravated sexual battery; a felony in that jurisdiction, but a class A misdemeanor in New York. The Hearing Panel recommended a five-year suspension with certain conditions including "[a] long-term regimen of treatment by a recognized specialist." (290 AD2d at 199.) This Court disagreed and disbarred the petitioner. We held that, "the purpose of a disciplinary proceeding is not to punish the respondent but rather, to determine the fitness of an officer of the court and to protect the courts and the public from attorneys unfit to practice." (290 AD2d at 199-200, citing *Matter of Wong*, 275 AD2d at 6.) This Court also cited *Matter of Harlow* (*supra*) with approval as one of the factors in its decision to disbar rather than suspend respondent.

Finally, in *Matter of Cunningham* (46 AD3d 43 [1st Dept 2007]), we accepted the resignation of the respondent who had pleaded guilty (again in New Jersey) to attempted endangering the welfare of a child in the third degree. The respondent had engaged in three conversations with a minor which included "inappropriate sexual content." (46 AD3d at 44.)[2]

---

2. It is important to note that had respondent been convicted of felony charges relating to sex abuse, disbarment would necessarily follow. (*See Matter of Ashdjian*, 287 AD2d 217 [1st Dept 2001]; *Matter of Abrams*, 214 AD2d 293 [1st Dept 1995].) Misdemeanor convictions have yielded a myriad of disciplinary results. (*See Matter of St. Clair*, 32 AD3d 170 [4th Dept 2006] [three-year suspension for attempting to possess sexual performance by a child]; *Matter of Boxley*, 8 AD3d 949 [3d Dept 2004] [legislative aide given one-year suspension for sexual misconduct]; *Matter of Weitz*, 308 AD2d 634 [3d Dept 2003] [three-year suspension for second degree sexual abuse and unlawful imprisonment in the second degree]; *Matter of Vickers*, 227 AD2d 76 [2d Dept 1996] [two-year suspension for third degree sexual abuse].) This seemingly random assignment of sanction recalls Justice Scalia's dissent in *Dickerson v United States* (530 US 428, 455 [2000]):

"The issue, however, is not whether court rules are 'mutable'; they assuredly are. It is not whether, in the light of 'various cir-

In this case, respondent's counsel asserts that "this court will now have the opportunity to address the *disturbing social problem* of adults who prey on minors via the internet in the context of attorney discipline" (emphasis supplied). The majority apparently agrees with this assessment and that a suspension is the appropriate remedy. In my opinion, this view misses the mark on many levels.

Respondent's conduct in a three-month campaign of seducing a girl that he believed to be 13 years old is more than just a "disturbing *social* problem" as the Departmental Disciplinary Committee's counsel describes it. Any such characterization that minimizes the acute danger of sexual predators should be summarily rejected. I recognize that New York attorneys convicted of various crimes are routinely suspended and ultimately return to practice law after a suitable period of time. Of course, there is a very broad spectrum of crime from the venal to the mortal and the discipline imposed upon attorneys must necessarily reflect that diversity.

However, consistent with the twin mandates of *Wong* and *Singer*, we are charged with the duty of protecting both the courts and the public from unfit attorneys, and even attorney discipline must have some absolutes; some event horizon that dictates disbarment. Generally, conversion of client funds has epitomized that litmus test. I believe that a convicted and registered sex offender merits disbarment, even when the crime, as in the instant case, is inchoate.

GONZALEZ, NARDELLI and McGUIRE, JJ., concur; SAXE, J.P., and CATTERSON, J., dissent in an opinion by CATTERSON, J.

Respondent suspended from the practice of law in the State of New York, effective the date hereof, for the longer period of three years or until conclusion of his term of criminal probation, and until the further order of this Court, as indicated.

---

cumstances,' they can be 'modifi[ed]'; they assuredly can. The issue is whether, as *mutated and modified*, they must *make sense*. The requirement that they do so is the only thing that prevents this Court from being some sort of nine-headed Caesar, giving thumbs-up or thumbs-down to whatever outcome, case by case, suits or offends its collective fancy."
The instant case demonstrates the danger of this Court becoming, to paraphrase Justice Scalia, a five-headed Caesar.