[890 NYS2d 507]

In the Matter of GEORGE S. BALIS (Admitted as GEORGE STEVEN BALIS), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 8, 2009

**APPEARANCES OF COUNSEL**

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Raymond Vallejo* of counsel), for petitioner.

*Hinshaw & Culbertson, LLP* (*Hal R. Lieberman* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent George S. Balis was admitted to the practice of law in the State of New York by the First Judicial Department on March 1, 1976 under the name George Steven Balis. At the time of his interim suspension, respondent maintained a law practice in Yonkers, New York.

On August 9, 2005, respondent was convicted in the United States District Court for the Southern District of New York (Lynch, J.), after a jury trial, of conspiracy to commit securities fraud and/or wire fraud (15 USC § 77q [a]; § 77x; 18 USC §§ 371, 1343), securities fraud (15 USC § 77q [a]; § 77x; 18 USC § 2), and wire fraud (18 USC §§ 1343, 2), all felonies under the United States Code. On March 6, 2006, he was sentenced to a term of imprisonment of 24 months followed by three years of supervised release with a special condition that he participate in a mental health treatment program at the direction of the Probation Department and the condition that he make a good faith effort to satisfy his judgment creditors.

On June 15, 2006, this Court deemed respondent's felony convictions as a "serious crime" pursuant to Judiciary Law § 90 (4) (d), immediately suspended him from the practice of law pursuant to Judiciary Law § 90 (4) (f), and referred the matter to a referee to conduct a hearing on sanction, within 90 days of his release from prison.

In July 2008, a sanction hearing was held before the Referee. In support of his request for a three-month suspension, respondent offered evidence, in mitigation of the charges, including the testimony of one character witness and letters from former clients and family. Respondent also offered evidence of his prior academic and professional successes, his lack of a disciplinary history and his record of pro bono activities.

In aggravation, the Committee offered evidence which demonstrated that respondent was found guilty of contempt of court by the Westchester County Supreme Court in 2003 for nonpayment of child support to his former wife and was incarcerated for six months. The Committee also cited respondent's failure to file an affidavit of compliance with this Court's order of interim suspension, failure to notify all clients in writing of his suspension, and failure to satisfy numerous large judgments

dating back to 1992. In light of these aggravating circumstances, the Committee recommended a five-year suspension.

On or about October 30, 2008, the Referee issued his report. Although noting that respondent was on supervised release and is required to report to a probation officer until 2011, the Referee recommended that respondent be suspended from the practice of law for three years retroactive to June 15, 2006 (the date of this Court's interim suspension order), noting respondent's "remorse" and stating that respondent "considers himself a decent man and a law abiding citizen in spite of his conviction and his having been sentenced to six months incarceration in Westchester County for contempt of court regarding what he refers to as a 'civil' matter."

Thereafter, a Hearing Panel convened to review the report of the Referee. On April 20, 2009, the Panel issued its determination which recommended that respondent be suspended from the practice of law for five years, nunc pro tunc to June 15, 2006, the date of his interim suspension.

In recommending a five-year suspension, the Panel noted that it believed it was inappropriate for respondent to be allowed to practice law while he is under a period of supervised release with a special condition that he participate in a mental health treatment program. The Panel further noted that it believed that respondent had neither accepted responsibility for his conduct nor expressed remorse. The Panel stated:

> "Respondent endeavors to persuade the Panel by sophistry, claiming that his regret for having allowed himself to get caught up with fraudsters entitles him to mitigation . . . Simply put, we do not equate his feelings of regret with remorse. More to the point, Respondent's attempt to excuse himself of any moral or criminal responsibility is pursued by blaming everyone else."

The Panel also found, in aggravation, respondent's prior civil contempt conviction, the "significant" outstanding judgments and liens filed against him, and his failure to file an affidavit of compliance with this Court's order of interim suspension.

The Committee now moves for an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (2) confirming the findings of fact and conclusions of law set forth in the Hearing Panel's determination and adopting the recommendation of the Hearing Panel that respondent be suspended for a period of five years, nunc pro tunc to June 15, 2006. In opposition, respondent

requests that this Court confirm the report of the Referee and adopt his recommendation that respondent be suspended for three years, nunc pro tunc to June 15, 2006, which would make respondent immediately eligible to apply for reinstatement.

As in all "serious crime" cases, the only issue for this Court to decide is what is the appropriate sanction to impose upon the respondent based upon the offense committed and any mitigating or aggravating circumstances (*Matter of Novak*, 200 AD2d 66 [1994]). In determining an appropriate sanction for respondent's misconduct, we consider both the nature and severity of respondent's criminal conduct, as well as any aggravating or mitigating circumstances (*Matter of Lever*, 60 AD3d 37, 40 [2008]). We are further guided by the principle that the purpose of a disciplinary proceeding is not to punish the respondent attorney, but rather to determine the fitness of an officer of the court and to protect the courts and public from attorneys that are unfit for practice (*Matter of Lever*, 60 AD3d at 40, citing *Matter of Wong*, 275 AD2d 1, 6 [2000]).

This Court has automatically disbarred attorneys convicted of securities fraud and conspiracy to commit securities fraud (*see Matter of Sorin*, 47 AD3d 1 [2007]; *Matter of Olesnyckyj*, 43 AD3d 167 [2007]; *Matter of Marks*, 4 AD3d 11 [2004]; *Matter of Novich*, 285 AD2d 136 [2001]; *Matter of Rosoff*, 274 AD2d 241 [2000]). This Court has imposed a suspension only where the underlying misconduct was less serious and there were significant factors in mitigation. In *Matter of Davis* (89 AD2d 107 [1982]) this Court suspended an attorney for two years where he was convicted of conspiracy to defraud the SEC by setting up a "straw" corporation to receive an illegitimate finder's fee, which resulted in the respondent's receipt of $24,000 from the ensuing stock transactions. In determining an appropriate sanction, this Court found that the attorney's conduct was of a kind and magnitude that required serious consideration of disbarment. However, in suspending the attorney for two years, this Court considered the following mitigating factors: the misconduct occurred many years ago and in the intervening years he experienced severe and sustained pain and anguish as a result; he exhibited genuine remorse; he cooperated fully with, and testified for, the government in the prosecution of other participants in the conspiracy; and he made restitution far in excess of what he derived.

Furthermore, in *Matter of Lawton* (113 AD2d 351 [1985]), an attorney was found to have improperly entered into a business

relationship with a client and to have breached his fiduciary obligation and responsibilities to his client by soliciting an investment exceeding $30,000 in a corporation of which the attorney was an officer, director and owner of 50%; failing to advise his client of the speculative nature of the corporation's business; and, failing to account to his client for said moneys. In determining an appropriate sanction, the court considered that the attorney paid the complainant $24,500 as compensation for his loss, and suspended him for three years.

Here, respondent engaged in much more reprehensible conduct than the attorneys in *Davis* and *Lawton*, as detailed above. As such, respondent must face a considerably greater sanction. Accordingly, regardless of whether respondent's conviction be deemed an analogue felony, we find that the serious nature of his crime coupled with his complete failure to assume responsibility for his actions, warrants disbarment, effective the date of his interim suspension.

Accordingly, the motion is granted to the extent of confirming the findings of facts and conclusions of law of the Hearing Panel, disaffirming the sanction recommendation, and disbarring respondent from the practice of law, his name to be stricken from the roll of attorneys and counselor-at-laws in the State of New York, effective June 15, 2006.

SAXE, J.P., SWEENY, CATTERSON and MOSKOWITZ, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, nunc pro tunc to June 15, 2006.