[929 NYS2d 227]

In the Matter of VICTOR J. MOLINA (Admitted as VICTOR JOSE MOLINA), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, September 1, 2011

APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Raymond Vallejo* of counsel), for petitioner.

*De Leon & Associates, PLLC.* (*Edgar De Leon* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Victor J. Molina was admitted to the practice of law in the State of New York by the First Judicial Department on June 23, 1999. At all times relevant to this proceeding, he has maintained a law practice within this Department.

Pursuant to his guilty plea entered in Kings County, Criminal Court, respondent was convicted of official misconduct (Penal Law § 195.00 [1]), a class A misdemeanor, upon his admission that while employed by the New York State Department of Taxation and Finance (DTF) from July 1988 until February 9, 2007, he engaged in the practice of law without seeking permission and accessed the confidential tax records of a company for use in a client's civil suit. Respondent was sentenced to three years' probation, a $1,000 fine and a $160 surcharge upon his agreement not to work for the State of New York any further.

The Departmental Disciplinary Committee brought three charges against respondent: (1) by committing the misconduct underlying his guilty plea, respondent engaged in illegal conduct that adversely reflects on his trustworthiness or fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (3) (22 NYCRR 1200.3 [a] [3]); (2) by practicing law outside the scope of his employment with DTF without the requisite permission, respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]); and (3) by accessing confidential information via his computer at DTF in connection with his representation of private clients, respondent likewise engaged in conduct that adversely reflects on his fitness as a lawyer.

In his answer, respondent substantially conceded the factual allegations and admitted the first charge. He denied the second on the ground that his supervisors were aware of his outside law practice because he represented many of them. In denying the third, respondent asserted, inter alia, that the information

he accessed via his DTF computer belonged to his clients and was accessed with their authority.

The Referee sustained all three charges and recommended a three-month suspension. The Hearing Panel confirmed the Referee's liability determination, but disagreed with the sanction, recommending public censure.

The Committee now seeks an order confirming the findings of fact and conclusions of law of the Referee and Hearing Panel. As a penalty, the Committee seeks a three-month suspension or such sanction as this Court finds just and proper. Respondent seeks confirmation of the Panel's report and recommendation and the imposition of public censure.

In a prehearing stipulation, the parties acknowledged that while employed with DTF, respondent acted as counsel in 17 enumerated civil cases, acting pro bono or for a fee of as much as $3,250, and represented clients in various criminal matters, including 24 arraignments, earning $300-$500 per appearance. Respondent conceded liability and presented evidence in mitigation. The evidence established that respondent worked full-time as a Tax Compliance Agent for DTF and signed an employment agreement that provided, inter alia, "Employees must request approval of the Commissioner of Taxation and Finance to engage in . . . outside legal . . . work." The agreement further provided that the "[u]nauthorized use of data obtained through the computer system is prohibited. Personal use of such data constitutes improper handling of taxpayer information" and subjects employees to criminal action. While respondent was admitted to practice law in New York and New Jersey in 1999, he was never employed as an attorney by DTF. Respondent did, however, serve as a union delegate, including the representation of employees charged with unauthorized use of the database, including one who was terminated and brought up on criminal charges. Respondent stated his understanding that "information that is entered into the [DTF] computer database is considered confidential."

Respondent explained that he learned of the prohibition against practicing law without authorization only after criminal charges were brought against him in 2007. He also testified that, in 2005 or 2006, he learned of the prohibition in the course of a grievance proceeding against a coworker. However, he understood the requirement to mean that he should, but was not required to, ask for permission, and that he could practice law as long as he did not represent anyone before DTF.

In 2004, respondent opened a law office in the Bronx, while employed full-time by the DTF, without seeking authorization to practice law from the Commissioner of Taxation and Finance. His clients that year included the partner of a New York company, whom he represented in a dispute with her partners in an action he brought against the company in Supreme Court, Bronx County. He accessed the department's database, with his client's authorization, to find out where her partners were located and to ensure that they were not moving partnership assets. He also accessed a tax reporting system in order to ascertain whether the partnership filed a tax return and view the addresses listed for it and the "sales tax reporting system," "access[ing] at least three databases" which contained information derived from tax returns. Respondent was aware that he had done something wrong and that his conduct exposed him to disciplinary and criminal action. Respondent admitted that, from 2004 through 2006, he used his computer at DFT to verify addresses of other adverse parties for the purpose of process service.

In mitigation, respondent, who was 46-years-old at the time of the hearing and married with two children, is a recovering alcoholic and substance abuser, who attends Narcotics Anonymous and Alcoholics Anonymous meetings weekly. He has been drug free and sober since 1988. In 1992, while working full-time for DTF, respondent, who was born to an alcoholic family, became the first member of his family to graduate from college. He then attended Fordham Law School at night while continuing to work to support his family, and graduated in May 1998. His decision to begin practicing law was motivated by his wife's loss of employment due to a disability and the expiration of his student loan waiver. His annual salary was in the high $40,000's to low $50,000's, and he was not sure how he would make ends meet. He testified that his supervisors and coworkers at the DTF, some of whom he represented, were aware of his law practice.

At the time respondent accessed the database maintained by DTF to verify addresses for his practice, he was unaware that private resources were available for such purpose. He was newly admitted, received no direct payment for using the database and intended no harm to anyone. Respondent resigned his employment with DTF in February 2007. At the time of the hearing, he was working as a solo practitioner in the Bronx living "hand to mouth," and stated that he did not know how he would survive financially if he were suspended from practice.

Respondent submitted 14 character letters from friends, relatives, colleagues, and former coworkers at the DTF, attesting to his good character, hard-working nature, and desire to help others, including those unable to pay. Respondent took responsibility for his actions and expressed remorse.

In recommending a three-month suspension, the Referee considered the mitigating and aggravating factors, and found that respondent's persistent behavior, motivated by personal gain, and the fact that respondent committed a crime, warranted more than a censure. The Hearing Panel found that the three-month suspension recommended by the Referee was unwarranted given the mitigating factors, noting a line of cases in which this Court imposed a public censure in matters involving no direct personal gain (*e.g. Matter of Katz*, 15 AD3d 1 [2005] [attorney signed his client's name to a backdated letter which he misrepresented as having been timely executed and delivered, with mitigation including remorse, acknowledgment of responsibility and character testimony]; *Matter of Holley*, 285 AD2d 216 [2001], *lv denied* 97 NY2d 606 [2001] [improper release of a client's sealed document to the press and misrepresentation of knowledge that the documents had been sealed]). The Panel noted that this Court has consistently imposed public censure for misdemeanors repeated over even longer periods of time, including failure to file tax returns (*e.g. Matter of Levitt*, 243 AD2d 69 [1998]) and considered respondent's conduct to be no worse than that of the attorney in *Matter of Lee* (32 AD3d 74 [2006] [83 violations of court orders restraining disclosure of confidential information and secrets learned in the course of his employment, resulting in civil and criminal contempt]).

The Referee's and Hearing Panel's findings of fact and conclusions of law are amply supported by the record, which includes respondent's admissions. Thus, the only issue is the appropriate sanction to be imposed. While respondent's misconduct resulted in a misdemeanor conviction, that alone does not warrant a suspension (*e.g. Matter of Levitt*, 243 AD2d 69 [1998], *supra*). It is the nature of the misconduct that controls. Cases involving forgery are distinguishable, an act this Court views as a "serious matter" that "strikes at the very heart of an attorney's obligations to be honest in all . . . dealings" (*Matter of Mahoney*, 56 AD3d 169, 176 [2008] [three-year suspension]). "The sanctions generally imposed for forgery offenses range from a short suspension to disbarment depending upon the repetitiveness of the misconduct and the desire for personal profit" (*Mat-*

*ter of Glotzer*, 191 AD2d 112, 114 [1993] [six-month suspension]; *cf. Matter of Holley*, 285 AD2d 216 [2001], *supra* [public censure]). Respondent's use of the database was not in violation of a court order and involved information that, though classified as confidential by DTF, could have been obtained by other, lawful means. Further, respondent immediately admitted and took responsibility for his misconduct, fully participating in the Committee's investigation. While respondent's unauthorized practice of law is not excused by the fact that it was well-known at the DTF, his open practice of law lends credibility to his asserted belief that such practice was not prohibited. Moreover, his decision to practice law was attributable to financial pressure, rather than "a lavish lifestyle or the desire for a personal accumulation of wealth" (*Matter of Clark*, 60 AD3d 159, 161 [2009] [two counts of failing to file a tax return attributable to dire financial situation]). No venality or personal greed has been shown (*see Matter of Issler*, 283 AD2d 59 [2001] [public censure for attorney who intended to deceive the court but did not intend to benefit appreciably from his conduct]).

Accordingly, the Committee's petition should be granted to the extent of confirming the Hearing Panel's findings of fact and conclusions of law, and respondent publicly censured.

GONZALEZ, P.J., TOM, ANDRIAS, RENWICK and ABDUS-SALAAM, JJ., concur.

Respondent publicly censured.