OPINION OF THE COURT
Per Curiam.
Respondent Michael Steven Samuel was admitted to the practice of law in the State of New York by the First Judicial Department on July 12, 1993. At all times relevant to the misconduct which underlies this proceeding, he maintained an office for the practice of law within the First Judicial Department.
In 2003, respondent, whose law practice focused on debt collection and personal injury litigation, founded Sterling Recoveries, Inc. (Sterling), a company which engaged in the purchase of distressed debt portfolios and thereafter, the collection of the debts within those portfolios. In 2004, Abraham Pustilnik (Pustilnik) invested $50,000 with Sterling via AAA Empire Medical Management, Pustilnik’s company. Pursuant to the agreement between Pustilnik and respondent, Pustilnik’s investment would be used to acquire a debt portfolio and once Pustilnik recouped his initial investment, he would thereafter receive 50% of Sterling’s profits. In March 2005, after Pustilnik had recouped his initial investment, respondent learned that Pustilnik had been indicted by the New York County District Attorney’s Office (District Attorney’s Office) for activities unrelated to Pustilnik’s relationship with Sterling. Respondent also learned that as a result of the indictment, Supreme Court, New York County had issued a civil forfeiture order, freezing Pustilnik’s income and all of his assets. Because respondent had never seen nor had been served with the forfeiture order, he believed that the forfeiture order did not apply to, bind, nor restrain him.
In 2006, respondent, who was told by Pustilnik that he had no money for food, wrote a check for $20,000 from Sterling’s account to one of Pustilnik’s relatives. Moreover, despite being aware of the forfeiture order, respondent continued to reinvest Pustilnik’s profits in Sterling by purchasing more debt portfolios.
In 2007, the District Attorney’s Office contacted respondent during the course of its investigation of the case it had brought *136 against Pustilnik. Respondent fully cooperated with the investigation and on September 20, 2010, because respondent made several cash payments to Pustilnik after respondent became aware of the forfeiture order, he was charged with one count of criminal contempt in the second degree (Penal Law § 215.50 [3]), an A misdemeanor. That same day, upon realizing that the fact that he had not been served with the forfeiture order did not obviate compliance with it and thus proscribed him from disbursing any money to Pustilnik and/or reinvesting Pustilnik’s profits in Sterling, respondent pleaded guilty to one count of criminal contempt in the second degree. In so pleading, respondent admitted that
“[although I subsequently became aware that Mr. Pustilnik was the subject of a civil forfeiture order imposed by the New York County Supreme Court in or about January 2005 that froze Mr. Pustilnik’s income and assets, I made several cash payments to him from monies that he earned from [his] investment.”
Pursuant to the plea agreement, respondent was sentenced to three years’ probation, was ordered to forfeit $60,000 and directed to pay $53,000 to Pustilnik. Additionally, respondent was required to report the conviction to the Departmental Disciplinary Committee (Committee).
On May 5, 2011, the Committee filed a petition seeking an order declaring that the crime of which respondent was convicted, contempt in the second degree, constituted a “serious crime” pursuant to Judiciary Law § 90 (4) (d) and 22 NYCRR 603.12 (b). By unpublished order dated October 14, 2011, we granted the Committee’s petition and pursuant to 22 NYCRR 603.4 (d), referred this matter to a Hearing Panel (Panel) to conduct a hearing on sanctions. The Panel conducted a hearing, respondent was present, represented by counsel, was afforded an opportunity to be heard, and presented evidence. In addition to respondent’s testimony, the Panel was provided with a stipulation between the parties establishing the above-mentioned facts. Additionally, the Panel also heard from several witnesses who testified about respondent’s good character. The Panel issued its report, finding no aggravating factors warranting suspension and finding several mitigating factors supporting public censure, inter alia, that respondent acted from a misapprehension of the law, he fully cooperated with the authorities and their investigation, he demonstrated remorse for his actions, and he did not profit by violating the forfeiture order. Thus, rather than suspension, the sanction sought by the Committee, the Panel recommended public censure.
*137 The Committee now petitions this Court for an order pursuant to 22 NYCRR 603.4 (d), 605.15 (e) (2) and Judiciary Law § 90 (2), confirming the findings of fact and conclusions of law made by the Panel. The Committee does not seek confirmation of the Panel’s recommended sanction, leaving it to us to impose whatever sanction we deem appropriate. Upon a review of the Panel’s report, which details the testimony of all witnesses who testified at the hearing and based on the stipulation of facts submitted to the Panel, we hereby confirm the Panel’s report in its entirety.
As in all serious crime cases, the only issue for this Court to decide is the appropriate sanction (Matter of Balis, 70 AD3d 76, 79 [1st Dept 2009]; Matter of Novak, 200 AD2d 66, 68 [1st Dept 1994]). With regard to prescribing a sanction, the fact that an attorney has been convicted of a misdemeanor does not in and of itself mandate suspension (Matter of Molina, 88 AD3d 363, 367 [1st Dept 2011]). Instead, no one fact is dispositive and the proper sanction depends on “the offense committed and any mitigating or aggravating circumstances” (Balis at 79; Novak at 68). As in all disciplinary proceedings “[our purpose] is not to punish the respondent attorney, but rather to determine the fitness of an officer of the court and to protect the courts and public from attorneys that are unfit for practice” (Balis at 79).
As noted above, both respondent’s testimony before the Panel and the stipulation of facts demonstrate that, by disbursing funds to Pustilnik despite knowledge of the forfeiture order, respondent is guilty of criminal contempt. However, the evidence also established that respondent only disbursed funds to Pustilnik in violation of the forfeiture order because he believed that since he was never served with the order, it was not binding on him. Moreover, the record evinces that respondent was remorseful, fully cooperated with the criminal investigation by the District Attorney’s Office, and pleaded guilty to the criminal charge, thereby accepting responsibility for his actions. Lastly, the evidence demonstrates that after pleading guilty, respondent then immediately reported the conviction to the Committee, fully cooperating with its investigation, he had a deep commitment to charitable work, was actively involved in several charitable organizations, enjoyed a good reputation in the legal community, and did not profit from the disbursements he made to Pustilnik.
Given the absence of any aggravating circumstances and the existence of several mitigating circumstances, we agree with the *138 Panel’s recommended sanction of public censure. Specifically, respondent committed the crime alleged under a misapprehension of the law and cooperated both with the District Attorney’s Office’s and the Committee’s investigation. Furthermore, respondent took full responsibility for his actions, did not profit from them, and has a good reputation in the legal community.
Accordingly, public censure is in accord with this Department’s precedent for analogous conduct resulting in a misdemeanor conviction (Matter of Molina, 88 AD3d 363 [1st Dept 2011] [attorney convicted of misdemeanor publicly censured in light of mitigation, including mistaken belief that behavior did not constitute a crime, admission of responsibility for crime, cooperation with Committee’s investigation, and fact that crime was not committed to fund a lavish lifestyle or accumulate wealth]; Matter of Clark, 60 AD3d 159 [1st Dept 2009] [attorney convicted of misdemeanor publicly censured in light of mitigation, including a reasonable excuse for actions, apparent remorse for having committed the crime, admission of responsibility for crime, cooperation with Committee and the authority’s investigation, and fact that crime was not committed to fund a lavish lifestyle or accumulate wealth]; Matter of Meyerson, 46 AD3d 141 [1st Dept 2007] [attorney convicted of misdemeanor publicly censured in light of mitigation, including mistaken belief that behavior did not constitute a crime, admission of responsibility for crime, and cooperation with Committee’s investigation]). Moreover, absent evidence that the behavior underpinning the conviction for criminal contempt was “both willful and ongoing” (Matter of Cutler, 227 AD2d 8, 10 [1st Dept 1996]), public censure rather than suspension is the appropriate sanction (Matter of Kunstler, 194 AD2d 233 [1st Dept 1993]; Matter of Mangiatordi, 123 AD2d 19 [1st Dept 1987]).
Accordingly, the Committee’s petition should be granted, the Panel’s findings of fact and conclusions of law confirmed, and respondent publicly censured.
Freedman, J.P., Richter, Abdus-Salaam, Manzanet-Daniels and Roman, JJ., concur.
Respondent publicly censured.